AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of California

**FILED**

FEB 28 2014



CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Brian Caputo | ) | Case No. |
| | ) | 5:14-mj-00008-JLT |
| | ) | |
| | ) | |
| Defendant(s) | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   2008 - February 2014   in the county of   Kern   in the
  Eastern   District of   California  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C sec. 2251(a) | Sexual Exploitation of a Minor |
| Title 18 U.S.C. sec. 2252(a)(2) | Receipt and/or Distribution of Child Pornography |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
Complainant's signature

Jeffrey R. Jones, FBI Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date:   02/28/2014

_____
Judge's signature

City and state:   Bakersfield, CA      Jennifer L. Thurston United States Magistrate Judge
Printed name and title

AFFIDAVIT IN SUPPORT OF
CRIMINAL COMPLAINT

I, Jeffrey R. Jones, being duly sworn, state as follows:

**Introduction and Agent Background**

1.   I am a Special Agent of the Federal Bureau of Investigation (FBI), and have been so employed since February 2011. I am presently assigned to the Sacramento Division, Bakersfield Resident Agency. My training and experience have included courses addressing basic criminal law, federal court procedures, and various investigative techniques. Since July 2011, I have had the opportunity to work and assist in investigations of Innocent Images matters, an FBI national initiative focused on the investigation of child sexual exploitation involving the internet. As part of my duties as an FBI agent, I have observed and reviewed numerous examples of child pornography in multiple forms of media, including computer media. In the course of my employment, I have assisted in the execution of numerous search warrants, including several relating to child exploitation investigations. As part of my duties, I investigate criminal violations relating to child sexual exploitation, including violations pertaining to the illegal production, distribution, receipt and possession of visual depictions of minors engaged in sexually explicit conduct and child pornography (as those terms are defined in 18 U.S.C. § 2256 and hereinafter referred to collectively as "child pornography") in violation of 18 U.S.C. § 2251(a) and 18 U.S.C. § 2252(a)(2).

2.   This affidavit is submitted in support of a criminal complaint for BRIAN CAPUTO of Arvin, California. As articulated below, there is probable cause to believe that CAPUTO has violated the two statutes summarized, in relevant parts, below.

Title 18 U.S.C. § 2251(a) – which subjects to criminal prosecution anyone who

1

"persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished . . . if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce"; and

Title 18 U.S.C. § 2252(a)(2), which makes it a crime for any person to knowingly receive, or distribute, any visual depiction using any means or facility of interstate or foreign commerce if the image contains materials which have been . . . shipped or transported, by any means including by computer, and if (a) the producing of such a visual involves a minor engaging in sexually explicit conduct and (b) such visual depiction is of such conduct.

3.   The facts set forth in this affidavit are based on my review of records related to this investigation and communications with others who have knowledge of the events and circumstances described herein.  Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the criminal complaint, it does not set forth all of the facts that I or others have learned during the course of this investigation.

## Statement of Probable Cause

4.   Based upon my knowledge, training, and experience and the experience of other law enforcement personnel, I know that the internet is a world-wide computer network that

connects computers and allows communications and the transfer of data and information across state and national boundaries. I also know that every computer that communicates over the internet is assigned an internet protocol (IP) address that uniquely identifies the device and distinguishes it from other computers or devices on the internet.

5. Individuals who use the Internet can communicate with each other by using e-mail. E-mail is an electronic form of communication which can contain letter-type correspondence and graphic images. E-mail is similar to conventional paper mail in that it is addressed from one individual to another.

6. E-mail messages usually contain a header which gives the screen name, the identity of the Internet access provider, and the return address on the Internet of the individual who originated the message or graphic.

7. The Internet also allows individuals to trade pictures or images.

8. Facebook is an online networking service. Users must register before using the site, after which they may create a personal profile, add other users as friends, exchange messages, and receive automatic notifications when the user updates his or her profile. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook users can share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public. The site also has features that allow account holders to send messages to and receive messages from other account holders.

9. On June 15, 2013, Federal Task Force Officer (TFO) Robert Hanner, who is currently assigned to the FBI's Violent Crimes against Children Exploitation Task Force, was asked to assist an El Paso Police Department patrol officer. Upon meeting the officer, TFO

Hanner learned that an unknown offender had initiated communication with a twelve (12) year old female child, Jane Doe 1 (subsequently referred to as JD1). The offender was using Facebook screen name "Giavanna Derann." During the Facebook communications, the offender requested nude images of JD1. The offender threatened to send nude images of one of JD1's eleven (11) year-old friends, Jane Doe 2 (subsequently referred to as JD2) to everyone if JD1 did not provide the requested nude images. The offender threatened to kidnap both of the minors if JD1 did not send nude images of herself.

10. The patrol officer and TFO Hanner proceeded to JD2's residence in El Paso, Texas. They spoke to JD2's parents and explained the nature of the investigation. JD2's parents advised that earlier in the day they had discovered that JD2 sent pornographic images of herself to an unknown person whom she had met on Facebook. JD2's father further advised that this person was using the screen name "Giavanna Derann" and the offender sent JD2 images of another unknown underage female. JD2's father advised that JD2 used her cell phone to communicate with the offender. He showed TFO Hanner an image of a female, without clothing on her chest, that appeared to be approximately twelve (12) years of age. This image was on JD2's cell phone and was an image sent to JD2 by the offender. JD2's father turned the cell phone over to TFO Hanner with written consent to search the cell phone.

11. The patrol officer and TFO Hanner proceeded to the residence of JD1 in El Paso, Texas. TFO Hanner met with JD1's father. The father provided written consent for TFO Hanner to examine JD1's cellphone. The father also allowed TFO Hanner to interview JD1.

12. JD1 advised that the offender had contacted her on Facebook and told her she had to send nude images of herself or he was going to distribute nude images of JD2 to everyone on the Internet. When JD1 refused, the offender threatened to kidnap her and JD2 if JD1 did not

send nude pictures. JD1 notified her sister who notified their parents. The parents notified the police.

13. TFO Hanner reviewed the contents of JD2's Facebook account and observed that there were messages from the offender to the child. In one of the messages, the offender provided his e-mail address as Loved_one11@ymail.com. TFO Hanner obtained a search warrant for the Yahoo! e-mail address Loved_one11@ymail.com and served it on July 01, 2013.

14. Yahoo! responded to the search warrant, and TFO Hanner reviewed the contents of the e-mail messages contained within the account. He observed that the e-mails contained a total of approximately 1661 images of minors engaging in sexually explicit conduct and approximately 146 videos of minors engaging in sexually explicit conduct. TFO Hanner observed that there were several messages in which the offender was asking for and/or threatening young females in order to obtain pornographic images of them.

15. One of the e-mails mentioned above was from peaceluv2312@gmail.com (determined through subsequent investigation to be a victim fifteen years of age at the time the picture was taken). The message contained thirty-five images of a minor engaging in sexually explicit conduct. One of the images appeared to be a "self-taken" close up picture of the girl's vagina.

16. On October 7, 2013, Special Agent (SA) Adam Reynolds was briefed on the case by TFO Hanner, and the FBI opened its investigation. SA Reynolds received a copy of the search warrant response provided by Yahoo!.

17. On or about October 7, 2013, SA Reynolds reviewed the e-mails provided by Yahoo!. There were approximately 843 e-mails in the account and almost every e-mail either contained child pornography or was loved_one11@ymail.com communicating with possible

5

other unidentified victims. To date, through the review of the loved_one11@ymail.com account, TFO Hanner and SA Reynolds have identified at least eight possible minor victims.

18. During the review SA Reynolds found an e-mail dated July 25, 2013, apparently sent at 2:53 AM, with the subject line "661 photos." The e-mail message was from an unidentified victim to loved_one11@ymail.com and contained a link to a Dropbox account. SA Reynolds clicked on the link, and it took him to a Dropbox webpage that contained approximately 661 photos of child pornography, all apparently of the same victim.

19. It appears that the link was created so that people accessing it could both view and download the images without utilizing a login and password. Chronologically the next e-mail message in the loved_one11@ymail.com e-mail account, was dated July 25, 2013, at 9:27 PM. This e-mail was from Dropbox, Subject line "Complete your Dropbox Setup." SA Reynolds, in his training and experience recognized this e-mail to be showing that the individual using the e-mail account loved_one11@ymail.com created a Dropbox account.

20. Included with the search warrant return from Yahoo! was information about IP addresses that had been used to access the e-mail account loved_one11@ymail.com. The IP address **174.137.112.16** had been used approximately forty-eight times to access the e-mail account between April 29, 2013 at 12:57:51 GMT and July 29, 2013 at 20:59:37 GMT.

21. On or about October 22, 2013, a federal search warrant, issued in the United States District Court for the Western District of Texas, was served on Dropbox. The purpose of the search warrant was to obtain the records associated with the Dropbox account loved_one11@ymail.com and the account that SA Reynolds had seen.

22. Special Agent (SA) Adam Reynolds received a USB thumb drive with account information for Dropbox accounts peaceluv2312@gmail.com (this e-mail account was later

6

identified to be the e-mail account and Dropbox account utilized by a victim of the subject) and loved_one11@ymail.com. Both accounts contained hundreds of images and videos depicting minors engaging in sexually explicit conduct. One of the images was a self-taken picture of the girl's breasts and vagina. Both accounts had been accessed numerous times from IP addresses **174.134.11.16** and **174.134.121.209**. IP address **174.134.11.16** was used to access one of the Dropbox accounts approximately nineteen times between July 7, 2013, and 2013. IP address **174.134.121.209** was used approximately four times between September 9, 2013, and October 1, 2013 to access both accounts.

23. On or about October 10, 2013, a search warrant was issued in the United States District Court for the Western District of Texas to obtain the records associated with the Facebook account "giavanna.derann".

24. On or about October 28, 2013, Special Agent (SA) Adam Reynolds received a response from Facebook.

25. On or about October 28, 2013, SA Adam Reynolds reviewed the information that had been provided by Facebook and learned that the Facebook account contained numerous images of child pornography. The private messages showed the user of the Facebook account attempting to, and often actually acquiring, more child pornography images from unknown victims. The account was also used to send images of child pornography to other unknown individuals. The information provided by Facebook also included hundreds of pages of logs. Those logs showed the IP address **174.134.112.16** had been used to log in or perform other functions with the account approximately 331 times between May 20, 2013, and August 14, 2013. The same logs also showed IP address **174.134.121.209** had been used to log in or perform other functions with the account approximately 86 times between September 6, 2013,

7

and October 8, 2013.

26. Special Agent (SA) Adam Reynolds served an administrative subpoena on Bright House Networks, requesting information on the following IP addresses **174.134.121.209** on 10/07/2013 and **174.134.112.16** on 07/26/2013.

27. Bright House Networks responded to the subpoena with the following information:

Customer Name : PATRICIA L. CAPUTO

Customer Address (Service address): **1311 HAVEN DR, APT 8 ARVIN, CA 93203**

Associated IP address logs:

| IP Address | Start | Stop |
|---|---|---|
| 174.134.121.209 | 10/8/2013 18:33 | |
| 174.134.121.209 | 9/6/2013 16:50 | 10/8/2013 12:38 |
| 174.134.112.16 | 8/14/2013 17:44 | 8/14/2013 20:46 |
| 174.134.112.16 | 4/29/2013 0:23 | 8/14/2013 14:51 |

28. On or about February 4, 2014, a search warrant was issued in the United States District Court for the Western District of Texas that authorized the disclosure of Facebook records. The search warrant response showed that Brian Caputo's Facebook account (Facebook ID 1049042849) had been forensically linked to six "fake" Facebook accounts. Facebook considers an account fake if the name and personal identifiers are not for the actual person owning and operating the account. The accounts had been used to extort (apparent) minor females who were self-reporting their ages as between eight and thirteen years. The Facebook account user would threaten to take specific actions if the minor female did not send sexually explicit images to Caputo. Facebook also provided information on IP addresses being used to

access both Caputo's real account and the fake Facebook accounts. The IP address **174.134.121.209** was used to access Caputo's authentic Facebook account numerous times. The same IP address was also used to access the following fake accounts numerous times: Giavanna Derann, Britt Any and Cristal Dafnie. The IP address **174.134.121.16** was used to access the following fake accounts numerous times Giavanna Derann, Catness Love, Melissa Harpson, and Cristal Dafnie. After reviewing the above fake accounts, SA Reynolds determined these accounts were used to facilitate Caputo in extorting young adolescent females to produce and distribute to him images of themselves nude and/or engaging in sexually explicit conduct.

29. SA Reynolds performed a check of open internet databases for the name BRIAN CAPUTO in Arvin, California. The search revealed a BRIAN CAPUTO with a home address of **1311 HAVEN DRIVE, APT 8, ARVIN, CALIFORNIA 93203.**

30. A federal magistrate judge later signed a search warrant to search CAPUTO's residence for contraband, evidence, fruits and instrumentalities related to violations of Title 18 U.S.C. § 2251(a) and Title 18 U.S.C. § 2252(a)(2) at 1311 Haven Drive, APT 8, Arvin, CA.

31. On February 28, 2014, FBI agents executed the federal search warrant. During the course of the search warrant, agents spoke to CAPUTO about the child pornography. CAPUTO stated that he began viewing images of young girls approximately 11-13 years old when he was approximately 16 years old. He said that he was on a text messaging service called "texme" when he received photographs containg a young girl who was fully naked. CAPUTO said that after seeing the photograph he became interested in young girls and started to contact them so that they would send him photographs. CAPUTO said that this past year he has been using Facebook and a messaging service called "Kik" to contact young girls and convince them

9

to send him nude photographs.  CAPUTO said that he also utilized the email address Loved_one11@ymail.com to communicate with the girls. CAPUTO said that he would pose as a girl named Giavanna Derann who he portrayed as being 15 years old.  He said that he would talk to girls using Facebook and Kik to befriend the girls.  He said that he would ask them to send naked photographs and if they did not send him the photographs he would threaten them with exposing their photographs to all of their family and friends online.

32.    CAPUTO said that he currently had approximately 400- 500 nude photographs and videos of young girls approximately 11-15 years old on his cellphone.  He said that he last looked at the photographs approximately one week ago.

33.    Agents conducted a scan of CAPUTO'S cell phone to determine if any child pornography was present.  During the scan of the cell phone numerous photogrpaghs and videos were identified as possibly containing child pornography.  Agents opened several files on the cellphone and confirmed the files appeared to contain child pornography contraband.  For example one video depicted what appeared to be an 11 – 13 year old girl with dark hair who was stripping all of her clothing off until she was completely naked.  Once the girl was naked you could clearly see her breasts and genital area.  Another picture contained what apperared to be an 11-12 year old girl standing and posing naked with her breasts and genital area exposed.

## Conclusion

34.    Based upon the above facts and information, I submit there is probable cause to believe that defendant, Brian Caputo, has violated Title 18 U.S.C. § 2251(a) and Title 18 U.S.C. § 2252(a)(2) in that he has persuaded minors to engage in sexually explicit conduct for the purpose of producing any visual depiction and has received and/or distributed images of a minor

engaged in sexually explicit conduct through use of a computer and the internet.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____
Jeffrey R. Jones
Special Agent, FBI

Subscribed and sworn to before me this 28th day of February, 2014.

_____
Jennifer L. Thurston
United States Magistrate Judge