BENJAMIN B. WAGNER
United States Attorney
DAVID L. GAPPA
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone:  (559) 497-4000
Facsimile:  (559) 497-4099


Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.  1:14-CR-00041 LJO |
| Plaintiff, | MEMORANDUM IN SUPPORT OF THE GOVERNMENT'S MOTION FOR REVOCATION OF RELEASE ORDER |
| v. | |
| BRIAN CAPUTO, | DATE: March 12, 2014 TIME: 1:30 pm. PLACE: Courtroom Three |
| Defendant. | JUDGE: HON. LAWRENCE J. O'NEILL |

The United States provides has identified some of the factors that weigh in favor of the defendant's continued detention as a flight risk and a danger to the community in the motion that it filed on March 10, 2014.  The government now provides the following memorandum to outline the legal framework under which the court should make its decision on the government's motion.

The Bail Reform Act allows the release of a person pending trial unless a court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  Under 18 U.S.C. § 3142(e)(3)(E) there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" when, as here, there is probable cause to believe that the defendant committed an offense involving a minor victim under 18 U.S.C. § § 2251 or 2252(a)(2).   Notably, the presumption is not that just that a defendant is a danger and a flight risk; rather, the presumption is that there is no combination of conditions that can be fashioned,

1

even the most restrictive ones, that will reasonably assure the safety of any person and the community as well as the defendant's assurance at future court appearances.  In *United States v. Hir,* 517 F.3d 1081 (9th Cir. 2008),  Judge Reinhart confirmed that this presumption shifts a burden of production to the defendant, but the government must prove by "clear and convincing" evidence that a defendant is a danger to any other person or the community, 18 U.S.C. § 3142(f)(2)(B).  Alternatively, the government needs to prove that the defendant is a flight risk only by a preponderance of evidence.

In *Hir*, Judge Reinhart noted that if a defendant proffers evidence to rebut the presumption of dangerousness, a court must then consider four factors in determining whether release or detention is appropriate.  These factors are: 1.) the nature and circumstances of the offense charged; 2.) the weight of the evidence against the person; 3.) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  *United States v. Hir,* 517 F.3d 1081, 1086; 18 U.S.C. § 3142(g).  As Judge Reinhart emphasized, the "presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption 'remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to the factors listed in § 3142(g)."  *Hir*, citing *United States v. Dominquez*, 783 F.2d 702, 707 (7th Cir. 1986).

When this court places the facts of this case into the relevant legal framework, it is apparent that the defendant is both a danger to the safety of persons and the community and also a flight risk.   The defendant has not rebutted the presumption that there is no combination of conditions that can be fashioned to assure the safety of the community and his future court appearances.  A defendant must produce evidence; it is not enough to merely have conditions placed on his freedom.  Even if the court were to treat the proposal to have the defendant's mother be a third-party custodian as evidence, this would fall short of rebutting the presumption that no combination of conditions will reasonably assure the safety of the community and the defendant's future court appearances.  The defendant's mother cannot watch him twenty-four hours each day.  Nor can she be with him twenty-four hours each day.  But perhaps more important is that the Pretrial Services officer has suggested that the defendant return to

2

the very location where the defendant secretly committed his crimes while living with the proposed third-party custodian.  By his own admission, the defendant has been extorting sexually explicit images of girls all over the United States since he was age 16, and he did this while he lived with his mother in the Los Angeles area and in Kern County.  The defendant was able to sexually exploit girls ages 8-15 for several years without his mother's knowledge or intervention.  Significantly, even while the Federal Bureau of Investigation was attempting to locate the defendant, Immigration and Customs Enforcement (ICE) began its own investigation of the defendant from a different source.  As part of that investigation, ICE agents visited the defendant on approximately January 3, 2014, and confronted him, his mother, and his sister with information that someone had used their internet connection to upload approximately one dozen images of minor females being sexually exploited to a Facebook account.  The defendant's mother became visibly upset, which suggests that she had no idea that her son was responsible for the crimes.  But everyone denied any knowledge of the crimes or the Facebook account.  The defendant suggested that someone else had used their unsecured wireless internet connection, but agents pointed out that the connection was secured.  Despite this intervention, the defendant continued to sexually exploit young females and access child pornography even while living with the proposed third-party custodian.  The defendant's mother has not demonstrated an ability to be aware of the defendant's activities much less to deter or stop him.  If anything, history suggests that she would be a poor monitor, despite any recent statements to the contrary.  But certainly this cannot be the basis for finding that the defendant has rebutted the presumptions that there are no conditions that can assure the safety of the community and the defendant's future court appearances.

But even if the court were to find this one factor to rebut the presumptions in favor of detention, on balance, the four factors that the court must consider all weigh in favor of the defendant's continued detention.  First, the "nature and circumstances of the offense[s] charged," are extremely serious.  The two offenses with which the defendant has been charged are both categorized as crimes of violence. For count one the mandatory prison term is 15 years with a maximum of 30 years; for count two the term of imprisonment ranges from five to 20 years.  The United States Sentencing Guidelines range is likely to be at least 30 years to life, and upon release, the defendant faces a possible lifetime term of supervised release and registration as a sex offender.  And it is clear that the defendant repeatedly

threatened violence and harm to girls aged 8-15 all over the United States.  Some of the defendant's criminal actions are detailed in the complaint affidavit, and the government is prepared to provide additional examples at the detention hearing.

As one example, however, the defendant terrorized a minor female in San Antonio, Texas.  She is now fifteen years of age, but she was only approximately thirteen years old and in seventh or eighth grade when the defendant contacted her while purporting to be a 12 year-old female.  The defendant sent to the minor female in San Antonio several images of a different minor female being sexually exploited. He quickly told the victim that she needed to produce and then send to him sexually explicit images of herself.  The defendant then began a series of threats that continued until shortly before his arrest by FBI agents.  At times the defendant threatened that, "If you don't send the images, I am going to hurt your family."  He then provided accurate e-mail addresses for the victim's parents and true names of the victim's friends.  He threatened to send sexually explicit images of the victim to these people, her school, and to post them on Facebook unless she produced and sent more images to him.  The victim was scared and submitted to the threats.  The defendant demanded that she produce sexually explicit images of herself and send them to him on an almost daily basis throughout 2013.  The defendant often required that the victim produce one hundred sexually explicit images of herself as well as produce sexually explicit videos.  The victim has stated that, even though she felt shame and embarrassment, she produced more than one thousand images of herself at the defendant's behest.  One of the videos that the defendant demanded she produce depicts the victim inserting a marker into her vagina.  She made many other videos of herself masturbating.  Some of the videos were so large, they could not be transmitted through e-mail or the other messaging services he had directed her to use.  So he had her upload them to an online storage site.   This victim has indicated that the defendant's crimes have taken a physical and emotional toll on her, and she had been "living in fear" that nude and/or sexually explicit images that she had been required to produce would be sent to her family and friends.  See FBI Report dated 1/3/24014, at Attachment A, provided separately.[1]

---

[1] The government prepared Attachments A, B, and C after the Pretrial Services report was prepared.  The Pretrial Services officer stated that she reviewed the material but that it did not change her recommendation.

There are many other victims in this case.  Unfortunately, many of the victims are yet to be identified, so no doubt they are probably living in the same fear as the young girl in San Antonio.  The complaint affidavit references how the defendant preyed on an eleven year-old and a twelve year-old girl in El Paso, Texas.  He threatened to kidnap them unless they produced and sent to him sexually explicit images of themselves.  He began his threatening communications, during which he again posed as a minor female so that, initially at least, he would appear more attractive to the victims.  To date, law enforcement has identified at least eight different victims across the United States.  Not only did he terrorize these victims when he caused them to produce sexually explicit images of themselves, he caused them harm by threatening to post the images publicly and to the victims' friends and family members.

To compound the harm that the defendant has done, and to underscore his dangerousness, the court should know that the defendant promptly exchanged his freshly extorted images of child pornography with other like-minded offenders.  For example, on August 4, 2013, the defendant engaged in Facebook chat with someone using the screen name Christian Hurtado.   The defendant asked whether Hurtado wanted to "start a kind a ring you get them to send you nudes and the girls I get we share them."  The defendant revealed that "the pics I have are 9-15 and I have over 7,000."  The defendant sent a sample of eight images to Hurtado and stated that the victim was 11 years old.  When Hurtado commented, "She's sexy," the defendant boasted that "I got 100 of her."

Overlapping with the nature and circumstances of the defendant's crimes is "the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release."  An important consideration is that the defendant has engaged in his threats, extortion, and child pornography trading since he was sixteen years old.  He has been able to do this not only with computers, but also with mobile devices such as a phone.  Disposable phones with internet access are relatively inexpensive, and this factor goes to the near impossibility of effectively monitoring the defendant, even if he is confined to the home where he committed his offenses.  Someone who has engaged in such serious criminal conduct on an almost daily basis for eight years presents a danger to the community, especially since the seriousness of the conduct escalated over time generally and specifically with multiple victims.  Judge Reinhart noted in *Hir* that the Bail Reform Act was enacted, in

large part, to address growing concerns that dangerous defendants were committing crimes while released on bail.  Judge Reinhart noted that Congress explained that the "broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release."  Hir, 517 F.3d 1081, 1089.   Even if the defendant were to attend counseling sessions, he cannot do so without going back into the community.  And he has demonstrated an ability to use deception and coercion to get people to do horrible things for him, so either obtaining a new phone himself or convincing someone to get him one would be a comparatively easy task.

Here, not only are the defendant's crimes extremely serious, they were committed over an extended period of years, in multiple locations, using multiple devices, even while the defendant was homeless for approximately three years.  Throughout his crime spree, however, the defendant consistently used deception and threats of force and violence against his victims.  There is simply no adequate means of effectively monitoring the defendant.  Pretrial Services no longer uses GPS monitoring, so the defendant cannot be tracked whenever he is not within range of his monitor.  But even if GPS monitoring were avaibale, the defendant could simply remove his electronic monitor and no one would have any means of tracking him.  This has happened in other cases where defendants have been placed on electronic monitoring for crimes involving the exploitation of minors both in this district and elsewhere in the United States.  Judge Reinhart appropriately noted concerns by the First Circuit in how ineffective electronic monitoring can be.  It "does not prevent a defendant from committing crimes within the monitoring radius, [and] there is no reasonable way to assure that a defendant would not make impermissible stops or detours on his way to places permitted under the restrictions, and . . . phone monitoring could be evaded by use of cellular and pay phones."  Hir at 1092, citing United States v. Tortora, 922 F.2d 880, 887 (1st Cir. 1990).

And just as Judge Reinhart noted in Hir that the proposed conditions in that case – which were more restrictive in some ways than the proposed conditions in this case – would be ineffective, no conditions here could be fashioned to reasonable assure the safety of the community and the defendant's appearance at future court appearances.  Notably, in order to be effective, the conditions depend on the defendant's "good faith compliance."  Hir, at 1092.   Judge Reinhart noted that even the most restrictive

conditions can, at times, be "easily circumvented or manipulated." *Id*. Here, it took law enforcement several months to locate the defendant, because he was using multiple internet connections. Some internet connections were made from a service provider in Fresno, other connections were from a wireless access point in Kern, another connection was from a McDonald's restaurant, and yet another was in the name of an individual with no apparent connection to the defendant. See FBI Report 12/16/2013, submitted separately as Attachment C. These are only during the time that he was living with his proposed third-party custodian. It does not even consider how many connections he made from various locations while he lived in the Los Angeles area and during the approximately three years in which he was homeless. Again, the Pretrial Services officer did not have this information. It is certainly relevant to the nature of the offenses committed and the risks that the defendant presents through an inability to effectively monitor his activities.

Nor can the defendant be trusted to comply with any conditions that might be imposed. Not only did the defendant purport to be a minor female and use that as part of his scheme to trick young girls into communicating with him, he set up at least six "fake" Facebook accounts. Facebook has touted itself as a relatively safe online community in which persons are required to use their real identity, and some information is verified before an account can be established. Generally, Facebook limits users to one personal account. When Facebook reported some of the defendant's conduct to the National Center for Missing & Exploited Children, and ultimately ICE agents followed up, the defendant lied to the agents about what he had been doing. More compelling, and what truly shows how untrustworthy he is, is that he continued to sexually exploit young girls. As noted above, ICE agents contacted the defendant on January 3, 2014, but on January 12, 2014, the defendant contacted a minor victim and stated, "contact me now before I sendout everything." Six days later he threated, "Your pics and vids I'm going to send them all out." The danger that he presents, given how easy it is to obtain a new phone, or to simply remove an ankle monitor, or to deviate from a permitted attorney visit in Fresno or a doctor's visit in Bakersfield, is simply too great. There is, as Judge Reinhart characterized the facts in *Hir*, "an unacceptably high risk that he would not" comply with even the most restrictive conditions that might be fashioned. *Hir*, at 1093.

Compounding the risks that the defendant presents are the "history and characteristics" of the defendant.  He has a prior criminal history (involving battery and theft offenses), and he has been terminated from employment previously because of apparent anger management issues.  He obviously has been extremely aggressive in threatening numerous young girls in this case.  He has used marijuana previously, and he apparently has had suicidal thoughts in the past.  His ties to his current residence are relatively brief, and minimal in that he merely resides in a room in his mother's apartment.  He has been homeless and/or living at no fixed address for up to three years relatively recently.  Neither he nor his family has any financial resources for a bond.  Thus, consideration of relevant evidence on this third factor also demonstrated, by clear and convincing evidence, that he should remain detained.

Finally, the "weight of the evidence," is considerable, and it also demonstrates by clear and convincing evidence that the defendant should remain detained.  The complaint affidavit outlines just some of that evidence such as hundreds, if not thousands, of images of child pornography stored on the defendant's phone, Yahoo! and Dropbox accounts, as well as in Facebook accounts.  Although investigators have attempted to be thorough, there is no assurance that they have not missed multiple other accounts created and used by the defendant to commit crimes.  Even though Pretrial Services officers and defense attorneys are fond of suggesting that this factor is the "least important," that is not articulated in the Bail Reform Act.  And as Judge Reinhart noted in *Hir*, a court must consider the weight of the evidence "in terms of the likelihood that [a defendant] will pose a danger."  *Hir*, at 1090.

The court should find that the defendant has failed to rebut the presumptions that no conditions can be fashioned to reasonably assure the safety of the community and his future court appearances.  If the court finds that the defendant has produced sufficient evidence to rebut these presumptions, the court should find, after considering the four statutory factors, that there is clear and convincing evidence that the defendant is a danger to the community and that, certainly by the requisite preponderance standard, there are no conditions that reasonably assure his future appearances for court proceedings.  The defendant should remain detained.

Dated: March 12, 2014                                    BENJAMIN B. WAGNER
                                                         United States Attorney


                                                   By:  /s/ DAVID L. GAPPA
                                                        Assistant United States Attorney
                                                        Fresno, California