```
1                    UNITED STATES DISTRICT COURT

2                   EASTERN DISTRICT OF CALIFORNIA

3                              --o0o--

4   UNITED STATES OF AMERICA,   ) Case No. 1:14-cr-00041-LJO-SKO
                                ) formerly 5:14-mj-00008-JLT
5              Plaintiff,       )
                                ) Fresno, California
6        vs.                    ) Wednesday, March 5, 2014
                                ) 2:06 P.M.
7   BRIAN CAPUTO,               )
                                ) Hearing re:  detention.
8              Defendant.       )
    _____)
9
                       TRANSCRIPT OF PROCEEDINGS
10              BEFORE THE HONORABLE SHEILA K. OBERTO
                    UNITED STATES MAGISTRATE JUDGE
11
    APPEARANCES:
12
    For Plaintiff:              DAVID L. GAPPA
13                              U.S. Attorney's Office
                                2500 Tulare Street, Suite 4401
14                              Fresno, CA   93721
                                (559) 497-4000
15
    For Defendant:              VICTOR M. CHAVEZ
16                              Federal Defender's Office
                                2300 Tulare Street, Suite 330
17                              Fresno, CA   93721
                                (559) 487-5561
18
    Court Recorder:             OTILIA ROSALES
19                              U.S. District Court
                                2500 Tulare Street, Suite 1501
20                              Fresno, CA   93721
                                (559) 499-5928
21
    Transcription Service:      Petrilla Reporting &
22                                Transcription
                                5002 - 61st Street
23                              Sacramento, CA   95820
                                (916) 455-3887
24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.
```

1

<u>FRESNO, CALIFORNIA, WEDNESDAY, MARCH 5, 2014, 2:06 P.M.</u>

THE COURT: Going now to the eighth matter on calendar, United States v. Brian Caputo, Case No. 14-mj-00008. If we can please have the parties' appearances? And I believe Ms. Patricia Caputo is going to be available by phone.

MR. SPEAKER: Can you hold up just a second?

THE COURT: Yes.

MR. SPEAKER: He needs to sign a form.

(Pause.)

MR. GAPPA: Good afternoon, Your Honor. David Gappa for the United States.

THE COURT: Good afternoon, Mr. Gappa.

(Pause - Court conferring with Clerk.)

MR. CHAVEZ: Good afternoon, Your Honor. Victor Chavez appearing on behalf of Brian Caputo and he is present in custody.

THE COURT: Good afternoon, Mr. Chavez and Mr. Gappa, and good afternoon to you, Mr. Caputo.

This the detention hearing in this case. Have counsel had an opportunity to review the Pretrial Services report?

MR. CHAVEZ: Yes, Your Honor.

MR. GAPPA: Yes, Your Honor.

(Pause.)

1    THE COURT: Good afternoon, Ms. Caputo. This is
2 Judge Oberto and I just asked the parties about the report.
3 Have you had a chance to review the report and do you have any
4 comments about the report?
5    MS. CAPUTO: I have --
6    THE COURT: No, I'm sorry. Ms. Caputo, I'm asking
7 the attorneys. I'll ask you any questions when and if I have
8 any. I apologize. I should've told you that.
9    MS. CAPUTO: Okay.
10    THE COURT: Yes, Mr. Chavez.
11    MR. CHAVEZ: Yes. Thank you, Your Honor. Your
12 Honor, I have reviewed the report and while I do recognize that
13 the charges are serious and that there is a presumption in this
14 case, I think that given Mr. Caputo's social history and the --
15 his family ties and the availability of his mother to serve as
16 third-party custodian as well as the availability of the
17 residence as a place for him to live, I do think that concerns
18 of danger are very adequately addressed by conditions that can
19 be imposed. I don't believe that flight is really the issue in
20 this case.
21    And bottom line I think is that so long as he doesn't
22 have access to internet or cell phone, I think that that --
23 that of course -- I mean that I think is absolutely critical to
24 prevent really the operative bad conduct in this case; and of
25 course the other conditions, meaning the electronic monitoring,

1 the third-party custodian and other limitations on travel I
2 think do adequately address issues of danger.
3     I would add also that because of his health
4 conditions he would be -- I don't think he would be properly
5 attended to in a county jail facility and I would ask the Court
6 to follow the recommendation of Pretrial Services.
7     THE COURT: Thank you, Mr. Chavez.
8     Mr. Gappa?
9     MR. GAPPA: Your Honor, the government sees it
10 differently. Often, I'm sure as the Court is aware, the
11 government sees these cases and the evidence differently but is
12 willing to live with the Pretrial Services recommendation even
13 though we don't agree with it.
14     This is not one of those cases and I would point out
15 in this case the report is based on limited information. Ms.
16 Serrano did not have some of the information that the
17 government has and that has learned since this report was
18 prepared.
19     So -- but even just looking at what we have in the
20 report, I believe it does correctly identify some of the
21 factors where he his a risk for non-appearance given the nature
22 and circumstances of his offense; the short-term residence; a
23 history that he has in Arvin; his limited family ties to that
24 area; lack of financial resources for bond; the concerns
25 regarding his mental state, specifically apparent anger

1  management issues which have been manifested as far back as
2  school, but also in employment where apparently he's been
3  terminated from every job because of yelling at co-workers.
4           There is a battery --
5           THE COURT:  You know -- I'm sorry to interrupt you,
6  Mr. Gappa.  You know, I noticed that too.  However, he has been
7  employed at Burger King for 13 months.  I noticed that too as
8  far as his inability to stay at a job, but then it did strike
9  me that he was able to continue employment at Burger King for
10 13 months.  I'm sorry to have interrupted you.
11          MR. GAPPA:  Correct.  So we have that, as well as
12 previously a battery offense.  There is additional criminal
13 misconduct prior to the charged offenses which includes, in
14 addition to that battery, theft-related offenses.
15          There is, on the issue of danger, again the nature
16 and circumstances of the offense, a past history of substance
17 abuse, the concerns identified about his mental health which
18 include thoughts about suicide.  And this is not a case where
19 the government believes he has overcome the presumption that
20 he's both a flight risk and a danger.
21          Looking somewhat at the nature and circumstances of
22 the offense, I think it's significant in this case to look at
23 what he was doing and the length of time in which he was
24 engaged in the conduct.  By his own admission it has been going
25 on for eight years and what has he been doing?  He's been using

1  different social media services, most recently Facebook.
2           He has set up multiple accounts using profiles of
3  younger females, generally in the age of 12 to 16 years of age,
4  uses those profiles to communicate with other girls around the
5  country and begins relationships with them online which then
6  turn coercive and threatening, and he convinces them to take
7  sexually explicit pictures of themselves and then he threatens
8  them that if they don't continue to provide those images he
9  will release the ones that he has and then he contacts their
10 friends.
11          And he has threatened to kidnap victims, and
12 specifically there were two in Texas.  Fortunately one of them
13 went to a relative who went to law enforcement which then began
14 working on the investigation.
15          And so when they've done all of the search warrants
16 that have been done they've discovered this was not unique to
17 those two victims, unfortunately, that there were dozens of
18 victims throughout the United States and for the past six to
19 eight years he has essentially been terrorizing an untold
20 number of victims, extorting from them very compromising
21 pictures.  In one instance it appears that one victim uploaded
22 661 images of herself to a drop box account.
23          And if that weren't bad enough, then the defendant is
24 communicating with other like-minded offenders and engaging
25 them in discussions about exchanging the images.

1            So for instance, and I have for the Court's
2   consideration, some of those discussions and I'll provide a
3   copy to counsel and the Court.
4            But what we have here are just excerpts from some of
5   the communications that the defendant in this instance, using
6   the screen name Giovanna Duran (phonetic), which was purporting
7   to be a -- I believe at the time it was -- Giovanna Duran was
8   the Facebook profile he had set up as a purported 15-year-old
9   female and he's contacting this girl and indicating that if you
10  don't send the pics I will send out your pictures to everybody
11  in Texas, do you want everyone in Texas to see you like this,
12  it will be all over the world, send me what you owe me.
13           When the person tried to block the communications he
14  again threatened and said don't ever do that again or I'll post
15  all of your pictures.
16           With a different victim who was 11 years old he's
17  saying can I see a picture of your body, I was wondering if you
18  could do the same thing just naked.  When the girl sends what
19  are sexually explicit pictures of herself she's saying, you
20  know, I'd rather be dead than hear people talking about me.  He
21  says if you want all of this fixed, you just need to send me
22  more pictures.
23           Then what we have on the page where it says it
24  appears the victim sent Caputo additional pictures but Caputo
25  deleted messages, it says on August 14th, 2013 Caputo --

1     THE COURT: I'm sorry. Tell me where you are. I
2 know I followed you until now. Are we on the third set of
3 conversations? I have June 29th and I have August 6th.
4     MR. GAPPA: It should be the fifth page counting from
5 the front and then it says --
6     THE COURT: I see August 4th, 2013.
7     MR. GAPPA: Correct.
8     THE COURT: I thought you said 14th. I'm sorry. I
9 misheard. Thank you.
10    MR. GAPPA: Correct. So on August 4, 2013 Caputo
11 used Facebook ID, and there's reference again to the screen
12 name Giovanna Duran to distribute child exploitation images,
13 and then he is stating okay, want to start a pic kind of ring
14 where you get them to send you nudes and the girls I get we
15 share them.
16    And there's reference to somebody being interested
17 and then the defendant says the pics I have are 9 to 15, I have
18 over 7,000. The other person says okay and then the defendant
19 says send pics of your ex, also I'll be able to know if they're
20 just fake pics.
21    And so the defendant is obtaining these thousands of
22 pictures from probably dozens of victims, eight so far have
23 been identified by law enforcement and then exchanging those
24 with other offenders. That is significantly dangerous and
25 serious conduct. The guideline ranges calculated by the

8

1  government is at least in the range of 25 years to life if
2  convicted for these charged offenses.
3          Now if that weren't significant enough, independent
4  from that investigation which was primarily done by the FBI
5  with assistance from other state or local agencies, separate
6  from that, in December of 2013 the defendant was caught
7  uploading suspected child pornography pictures to a Facebook
8  account.
9          So Facebook sent information to the National Center
10 for Missing and Exploited Children and said we believe that
11 somebody -- and it turned out to be in the geographical area of
12 Bakersfield -- is responsible for doing this.  It went to law
13 enforcement.
14         Ultimately Immigration and Customs Enforcement
15 officers or agents in Bakersfield got that information,
16 identified where the computer was believed to be, went to the
17 residence.  It was the defendant's residence, knocked on his
18 door, asked him about it.  He denied any knowledge of any of
19 that misconduct, denied knowing anything about a Facebook
20 account with the name Giovanna Duran, denied knowing anything
21 at all about child pornography.
22         And the defendant's mother came home, his sister was
23 there with a friend, they were all interviewed by the ICE
24 agents.  There was a suggestion, well perhaps it was an
25 unsecured wireless connection; that came from the defendant.

1  So he was essentially trying to suggest to the law enforcement
2  officers that somebody else, not in that household, that
3  somebody was highjacking their wireless signal and would be
4  responsible for that conduct.
5         So they had said well, would you mind if we come back
6  and do a search of computers.  Now for different reasons that
7  are not necessarily significant here, they never made it back
8  to the residence before the FBI did its search warrant
9  recently.
10         But what it shows is that to the extent that there's
11  any thought that these proposed conditions could mitigate the
12  risk of harm that he presents, it's absolutely impossible
13  because what you had are law enforcement officers with guns and
14  badges going to his door and confronting him with what he had
15  done and he denied it and he lied his way out of it, and it's
16  simple enough to get a new phone, to get new internet access
17  and to continue to exploit that technology and to exploit
18  victims just as he's been doing.  So there's absolutely no way
19  that anybody could ever monitor his activity.
20         So for those reasons, the presumption has not been
21  nor can it be overcome.  I would additionally add that just
22  today somebody in the El Paso District Attorney's Office
23  indicated that they were interested in coordinating information
24  about the government here and their case because they intend to
25  file charges against the defendant there given the number of

1  victims in Texas that have been identified.
2          THE COURT:  Thank you, Mr. Gappa.  I do have a
3  question.  Was this -- were these conversations before or after
4  the FBI caught the defendant uploading child pornography to a
5  Facebook account?
6          MR. GAPPA:  I believe these are before the FBI search
7  warrant and they were also before the ICE agents went.
8  However, what I think is significant is that the ICE agents
9  went there and he didn't stop what he was doing.  They were
10 there in December of 2013 and the FBI got there at the end of
11 February of 2014 and the conduct had continued without any
12 break.
13         So the fact that he was undeterred by law enforcement
14 going to his door and confronting him with this, he was able to
15 lie and deny his way out of it, but it just shows that given
16 that it had been going on for as long as it had and he had
17 gotten away with it, that it's out of control.
18         THE COURT:  Okay.
19         MR. CHAVEZ:  Could I respond to that, Your Honor?
20         THE COURT:  You may respond.  Yes, you may respond,
21 but I do have a question then for Ms. Serrano.  Go ahead.
22         MR. CHAVEZ:  Okay.  Thank you.
23         THE COURT:  Thank you.
24         MR. CHAVEZ:  Your Honor, first, I do not think -- I
25 think it's rather clear that Mr. Caputo is not a flight risk.

1  He has significant family ties to the area in which he lives.
2  He has a stable residence in which to reside.
3         He does have medical, and I would say even mental
4  health related concerns.  However -- and he has struggled with
5  these for a long time.  However, they -- you know, as the Court
6  pointed out, he has maintained employment for the last 13
7  months.  He is also attending high school classes in the
8  evening.  His --
9         THE COURT:  Actually Mr. Chavez, the probation -- I'm
10 sorry to interrupt you.
11        MR. CHAVEZ:  Yes.
12        THE COURT:  The probation officer's report indicates
13 his limited family ties to his current area of residence.
14        MR. CHAVEZ:  Well he has what he has.
15        THE COURT:  Right.  I understand that.
16        MR. CHAVEZ:  Yeah.  His family is his family.  I know
17 he's got a few sisters in the San Fernando Valley where he
18 spent significant amount of time.  His mother and his minor
19 sister reside in the home, and I believe there's an adult
20 sister in the community as well.  So I think that's -- aside
21 from his father, with whom I don't think he has a relationship,
22 and aunts and uncles, I think that's his family.
23        So I don't think -- I think that that's pretty
24 stable.  It is true, it's noted in the report, that he has had
25 suicidal thoughts.  However, he indicates that he's never had

1  -- he does not believe he would act on those thoughts.  He had
2  a battery 11 years ago.  I mean I don't know any specific facts
3  of the case and counsel did not point them out, but I don't
4  think that that makes him dangerous.
5       I don't think that he was under any obligation to
6  confess to a crime when investigators were investigating.
7       THE COURT:  I think the question is whether or not he
8  had an obligation to stop doing what he was doing.  I think
9  that's another issue, but I understand what you're saying.
10      MR. CHAVEZ:  Well as a threshold matter, everyone has
11 an obligation to follow the law.  But I think that what is
12 happening now, he's been arrested.  This is a greater
13 intervention in his life than, as counsel says, police officers
14 with guns and badges.  This is a bigger thing.
15      And I think that the government goes on and on about
16 how bad some of the conduct was and I have no argument with
17 that.  However, it's not the issue here and the weight of the
18 evidence is the least important factor.  The question now is
19 whether conditions can be fashioned that reasonably protect the
20 public and reasonably assure that he'll come to court.  And we
21 have learned from experience that that is not -- usually it's
22 not such an impossible task to accomplish.
23      So as ugly as the case is, and I have no quarrel with
24 that, I think that it's a diversion to lead the Court down that
25 path.  And I think that that -- what I would ask the Court to

1  focus on is whether we believe, whether the Court can believe
2  that Mr. Caputo will be compliant with the supervision of his
3  mom.  His mom is not employed.  She's at home all the time.
4  She has said that she'll make herself available.
5       It's my understanding that she believes that Mr.
6  Caputo would be compliant and quite frankly, Mr. Caputo lives a
7  pretty isolated -- socially isolated life, not unusual in these
8  cases, and without social media he would not be able to commit
9  this offense.  So I think if one focuses one's tools on that
10 issue, conditions can be fashioned.
11      THE COURT:  Thank you very much, Mr. Chavez.
12      I'll tell you what I'm going to do.  You indicated,
13 Mr. Gappa, that there was additional information that the
14 government had uncovered that Ms. Serrano did not have and you
15 did give the Court a significant amount of information at the
16 hearing today and I do recognize that the weight of the
17 evidence is the least significant factor, but it is nonetheless
18 a factor I need to consider.  I'm going to continue this matter
19 over until -- is Mr. Caputo in --
20      MR. CHAVEZ:  Lerdo, I believe.
21      THE COURT:  Lerdo?  And today's Wednesday?
22      MR. CHAVEZ:  Yes.
23      THE COURT:  And he could come back on Monday would be
24 the earliest he could come back?  What I'm going to do is, if
25 the parties are in agreement, is continue this matter over

14

1   until Monday so that Mr. Gappa can speak with Ms. Serrano and
2   Ms. Serrano can determine whether this additional information
3   would alter her recommendation and I will then hear the matter
4   at 1:30 p.m. on Monday.
5           MR. CHAVEZ:  And one question I have, Your Honor, is
6   the additional information the information that was presented
7   to us today, to the Court and --
8           MS. SERRANO:  That's my question as well, Your Honor.
9           THE COURT:  I believe so and I don't know if there's
10  any additional information.  That is the additional
11  information?  Mr. Gappa, I guess that's a question for you.
12          MR. GAPPA:  Yes.
13          THE COURT:  Okay.  So yes, that would be additional
14  information and I'm going to go over the additional information
15  myself also.
16          So do the parties have any issue with my continuing
17  this matter until Monday at 1:30?  I would be happy to continue
18  it until tomorrow.  However, I can't do that.
19          MR. CHAVEZ:  Yeah.  I just have a question as to
20  whether Ms. Caputo's availability.
21          THE COURT:  Oh, thank you very much and thank you for
22  pointing that out.
23          Ms. Patricia Caputo, can you hear me?  This is Judge
24  Oberto.
25          MS. CAPUTO:  Yes.  I can hear you.

1    THE COURT: Are you available at 1:30 p.m. on Monday,
2 March 10th?
3    MS. CAPUTO: Yes, I am.
4    THE COURT: Thank you very much. What we will do --
5 it will probably not be exactly at 1:30, but we will contact
6 you. Please be available between 1:30 and 3:00 o'clock. I
7 don't know how long the calendar is. I suspect it won't be
8 anywhere near 3:00 o'clock, but if you can please be available
9 that would be very helpful because if I do release your son
10 it's very important to have the third-party custodian in court.
11    I understand that you're not available or unable to
12 travel for financial reasons so I'm going to allow you to
13 appear by phone, but it's very important that you are available
14 to appear by phone because as you heard, this is a significant
15 case --
16    MS. CAPUTO: Yes.
17    THE COURT: -- and I do have to make some decisions
18 and review the evidence to determine if he is released, and if
19 he is, one of the significant reasons would be because he has a
20 third-party custodian and that is you.
21    Did you understand what I said?
22    MS. CAPUTO: Yes, I do, Your Honor.
23    THE COURT: Thank you very much. We will speak with
24 you on Monday. And is there -- so the parties are in agreement
25 to continue this matter to Monday, March 10th at 1:30 p.m.?

16

1    MR. CHAVEZ:  That's fine, Your Honor.
2    MR. GAPPA:  Yes, Your Honor.
3    MS. SERRANO:  Your Honor, Mr. Caputo appeared on Friday the 28th.  To go out to next Monday the Court would need to make a good cause finding.
6    THE COURT:  I'm going to make a good cause finding and that the Court will need to review the additional information that's been presented to the Court, and the Pretrial Services officer will also need to review that information to determine whether or not Mr. Caputo should remain detained or whether he should be released.

And I believe both parties have agreed to the continuance also.

14   MR. CHAVEZ:  Correct.
15   THE COURT:  Thank you very much.
16   MR. GAPPA:  Thank you, Your Honor.
17   MR. CHAVEZ:  Thank you.
18   (Whereupon the hearing in the above-entitled matter was adjourned at 2:31 p.m.)

--o0o--

CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/ Jennifer Barris                    March 20, 2017
Jennifer Barris, Transcriber
AAERT CET*668