# SOCIAL SECURITY ADMINISTRATION
## Office of Disability Adjudication and Review

## DECISION

| **IN THE CASE OF** | **CLAIM FOR** |
|---|---|
| | Period of Disability, Disability Insurance Benefits, and Supplemental Security Income |
| Brian Anthony Caputo | |
| (Claimant) | |
| | |
| (Wage Earner) | (Social Security Number) |

## JURISDICTION AND PROCEDURAL HISTORY

This case is before the undersigned on a request for hearing dated December 16, 2013 (20 CFR 404.929 *et seq.* and 416.1429 *et seq.*). The claimant appeared and testified by telephone at a hearing held on April 16, 2015, in West Los Angeles, CA. Also appearing and testifying were John David Sabow, M.D., an impartial Medical Expert, and Ronald K. Hatakeyama, Ph.D., an impartial Vocational Expert.

The claimant is represented by his mother, Patricia Caputo, a non-attorney representative.

The claimant is alleging disability since April 23, 2013.

## ISSUES

The issue is whether the claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through September 30, 2015. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful review of the entire record, the undersigned finds that the claimant has been disabled from April 23, 2013, through the date of this decision. The undersigned also finds that the insured status requirements of the Social Security Act were met as of the date disability is established.

Exhibit 8

See Next Page




## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a) and 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b) and 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, or work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f) and 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b) and 416.965). If the claimant has the residual functional

See Next Page

capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g), 404.1560(c), 416.912(g) and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW



After careful consideration of the entire record, the undersigned makes the following findings:

1. The claimant's date last insured is September 30, 2015.

2. The claimant has not engaged in substantial gainful activity since April 23, 2013, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: ① colpocephaly; ② CADASIL (Cerebral Autosomal Dominant Arteriopathy with Subcortical Infarct and Leukoencephalopathy); and ③ depression (20 CFR 404.1520(c) and 416.920(c)).

The alleged impairment of multiple sclerosis is determined to be non-severe.

4. The severity of the claimant's impairments medically equals the criteria of §§ 11.04 and 12.02 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-6p and 06-3p.

The severity of the claimant's impairments medically equal §§ 11.04 and 12.02. With regard to the "b" criteria, the claimant is determined to have mild limitations in activities of daily living; moderate limitations in social functioning; marked limitations in concentration, persistence and pace; and no evidence of episodes of decompensation.



At the claimant's April 16, 2015 hearing, the Medical Expert (a Board-Certified neurologist) testified the claimant had a diagnosis of degeneration / malformation / absence of the white matter of the brain, which connects two of the hemispheres. He has abnormalities in the brain with lesion of the brain stem, confirmed by MRIs. It was thought to be a brain tumor, but this was ruled out. He also has lesions at the cortex and in the frontal and temporal lobe (also confirmed by MRI).

The Medical Expert testified that while the claimant had a diagnosis of Multiple Sclerosis, the evidence did not support this diagnosis. He stated the white matter lesions in the brain stem and in the cortex are not typical for a MS patient. The fluid abnormalities also are not typical for a MS patient.

The Medical Expert noted that in Exhibit 4F, the claimant has right arm pain and swelling, as well as facial swelling, "brutal headaches," and decreased visual acuity. All of these are related. It also is noted the claimant has facial numbness, he cannot think clearly, he is fatigued, he "blanks out" at times, and he has pain in his hands and arms. The Medical Expert testified all of these are from this rare neurological disease, which is possibly CADASIL or Behcef's Syndrome. The Medical Expert believed it was CADASIL, which is a genetic disorder. The claimant would need to go to a major institution (such as USC, UCLA or Stanford), with professional neurology staff who are aware of these two rare diseases, to receive proper treatment. He noted, however, the inflammatory lesions in the brain stem could not be cured. The symptom of severe headaches was typical of both of these disorders.

The Medical Expert noted there is no medical listing for these disorders/diseases, but with the arterial disease, and the genetic nature of the condition, he opined the claimant equaled §§ 11.04 and 12.02.

The records at 4F and 7F include the claimant's multiple complaints, noted by the Medical Expert in support of his testimony, as well as numerous MRI studies. Exhibit 9F also references the MRI, as well as complaints of facial numbness.

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, and that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are generally credible.

The State Agency medical consultant's physical assessment and psychological consultants' mental assessments are given little weight because the testimony of the Medical Expert at the claimant's April 16, 2015 hearing is more consistent with the record as a whole. Furthermore, the State Agency consultants did not adequately consider the combined effect of the claimant's impairments – and the Medical Expert expressly considered the impairments in combination, in making his opinion the listings were equaled.

5. **The claimant has been under a disability as defined in the Social Security Act since April 23, 2013, the alleged onset date of disability (20 CFR 404.1520(d) and 416.920(d)).**

See Next Page

Brian Anthony Caputo (███████████)                                   Page 5 of 5

## DECISION

Based on the application for a period of disability and disability insurance benefits filed on May 3, 2013, the claimant has been disabled under sections 216(i) and 223(d) of the Social Security Act since April 23, 2013.

Based on the application for supplemental security income filed on May 8, 2013, the claimant has been disabled under section 1614(a)(3)(A) of the Social Security Act since April 23, 2013.

The component of the Social Security Administration responsible for authorizing supplemental security income will advise the claimant regarding the non-disability requirements for these payments and, if the claimant is eligible, the amount and the months for which payment will be made.

/s/ *Elizabeth R. Lishner*
Elizabeth R. Lishner
Administrative Law Judge

May 11, 2015
Date

