Carolyn D. Phillips,   #103045
Attorney-At-Law
P.O. Box 5622
Fresno, California  93755-5722
Telephone: (559)248-9833
Facsimile:  (559) 248-9820

Attorney for Defendant BRIAN CAPUTO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   *Plaintiff*,<br><br>v.<br><br>BRIAN CAPUTO,<br><br>   *Defendant*. | Case No. 1:14-cr-41<br><br>DEFENDANT BRIAN CAPUTO'S MOTION FOR RECONSIDERATION OF THE COURT'S DENIAL OF HIS MOTION FOR SENTENCE REDUCTION PURSUANT TO<br>18 U.S.C. § 3582(c)(1)(A)(i)<br><br>[Compassionate Release/COVID-19 FCI-Marianna] |

Defendant Brian Caputo, through his appointed counsel, Carolyn D. Phillips, moves this Court for reconsideration of its denial of Mr. Caputo's motion for compassionate release.  Doc. 139.

The Court's January 14, 2021 order, recognized Mr. Caputo's medical issues put Mr. Caputo at a "higher risk to complications from COVID-19," and acknowledged the government had conceded Mr. Caputo had exhausted his administrative remedies. Doc. 165, pp. 1-2.  The Court denied Mr. Caputo's motion for compassionate release because it found Mr. Caputo had not demonstrated that he was "not a danger to the safety of any other person or to the community." Doc. 165, p. 2.  The Court decision was based on the grave and serious nature of the offense which involved Mr. Caputo targeting and victimizing girls between the ages of 11 and 15, who he had enticed to

1

photograph themselves and to perform sexual acts on themselves, and then provide him the photographs which he distributed to others. *Id*.  Mr. Caputo was sentenced below the Guideline sentencing range in consideration of Mr. Caputo's multiple degenerative organic congenital brain disorders:  CADASIL, Colpolcephaly, absence of corpus callosum and Multiple Sclerosis.  (Doc. 113, Sent.Tr. 43-44; 45-47.)  The sentencing court could not "make a specific finding that the crimes were committed because of the medical condition", because the Court did not have that "sort of medical information before [it] to make such a conclusion."  (Doc. 113, Sent.Tr. 44.)

In denying Mr. Caputo's motion pursuant to § 3582(c)(1)(A), this Court concluded that Mr. Caputo had failed to meet his burden of showing that he is not a danger to the safety of any other person or community.

On January 21, 2021, Mr. Caputo was advised that he had tested positive for COVID-19.  Counsel has no further information regarding his condition since learning of the positive test, however, given Mr. Caputo's multiple medical conditions, the COVID infection poses an extreme risk of a catastrophic stroke leading to severe permanent disability or death.

Mr. Caputo respectfully requests the court reconsider its denial in light of the following.

**Danger to the Community**

The decision whether a defendant should be released under § 3582, ultimately rests on the court's consideration of the 18 U.S.C. § 3553(a) sentencing factors which includes consideration of whether the defendant poses a danger to any other person or to the community.  *United States v. Numann*, 2020 WL 1977117, at *2, (D.Alaska Apr. 24, 2020) (citing U.S.S.G. § 1B1.13(2)).  Mr. Caputo's release plan in conjunction with supervision through probation sufficiently address the need to protect the public.

**Mr. Caputo's Release Plan**

In Mr. Caputo's release plan, he stated that he would live with his mother Patricia Caputo in a home in Bakersfield. Doc. 139, pp. 13-14. The court has pointed out in its order denying the motion, that Mr. Caputo committed the crimes while he was living with his mother (Doc. 165, p. 2, fn. 3), however, Patricia Caputo was not aware that he was using his cell phone for an illegal purpose, if she had known, she would have put a stop to it. Doc. 113, Sent. Tr. pp. 20-21[1]. Now that Patricia Caputo knows how Mr. Caputo was using his cell phone, she has promised to make sure that Mr. Caputo does not have access to the internet by cell phone or by any other device. Doc. 157, Exhibit 9. She will also ensure that Mr. Caputo is compliant with the terms of supervision[2]. *Id*. Ms. Caputo's commitment is Brian Caputo's commitment as well, that he will never engage in such harmful behavior again. Doc. 113, Sent. Tr. pp. 17-18; Doc. 94.

Both Mr. Caputo and his mother are dedicated to adherence to every aspect of supervision. Both Mr. Caputo and his mother are focused on making sure Mr. Caputo does not return to prison, but instead remains in his mother's care where she can make sure he is receiving the medical care and treatment he needs. Doc. 157, Exhibit 9, p. 2.

Further, both Brian and his mother understand his diagnosis, the need for the appropriate treatment, including emotional and psychological assistance. Dr. John Sabow in his letter to the court, Doc. 139, Exhibit 2, stated that there was no cure for Mr. Caputo's genetically determined chromosomal anomalies, but that antiplatelet drugs and aggressive migraine control should be initiated. Dr. Sabow was of the opinion that

---

[1] Ms. Caputo also told the sentencing court that she did not find out about Brian's medical condition until after his arrest.
[2] The special conditions of supervision preclude Mr. Caputo's use of a computer "or any device that has access to any 'on-line computer'", unless approved by the probation officer, which includes internet services. All of Mr. Caputo's personal phone records are to be provided to the probation officer. By the terms of his supervision Mr. Caputo is required to participate in a sex offender treatment and therapy and may be required to participate in drug or alcohol treatment, or mental health treatment. Doc. 97, pp. 5-6.

3

Mr. Caputo's congenital anomalies had been "the dominant determinant of his criminal aberrational behavior irrespective of his IQ" and were the "substrate of his behavioral deviance . . . which could be successfully treated with psychological intervention . . . supplemented by neurological care." Doc. 139, Exhibit 2, p. 2. This combination of psychological and neurological care will assist Mr. Caputo in meeting his commitment to live a law-abiding life, for as long as he lives.

Further, Mr. Caputo's medical situation has become progressively worse. All of the genetic abnormalities he suffers are progressive degenerative conditions. Mr. Caputo will continue to suffer strokes, migraines, diminishment of his strength, and eventually dementia and death. When Mr. Caputo was seen by Dr. Weldon on April 12, 2019, the doctor commented that Mr. Caputo had obvious worsening cognition, and suggested medications to address cognitive impairment. Doc. 139, Exhibit 4. Of course, Mr. Caputo's crime took place on a computer and did not require physical strength or mobility. However, with the constraints in place through supervision, along with his mother's eye on adherence to supervision, diminishes concerns of reoffending.

Combining the care of his mother, proper neurological care, and psychological treatment with probation's supervision under the terms set forth in the judgment will ensure Mr. Caputo poses no danger to an individual or the community upon his release. Doc. 97, pp. 5-6.

**Rehabilitation and Recidivism**

Mr. Caputo accepted responsibility for the offense and shared his remorse on the record during sentencing. Docs. 80, 94, 95. He read for the court two letters he had written describing his remorse for his actions and asked forgiveness for the significant damage he caused the victims. Docs. 94, 95. He has shown significant evidence of rehabilitation, including taking and passing the GED test, and completing Basic Cognitive Skills, Drug Education, AIDS Prevention, Sun Smart for Unit Team, and obtaining ServSafe certification. Doc. 139, Exhibit 7, attached Exhibit 11, ("Summ.

Reentry Plan"), as of February 25, 2020. This evidence of rehabilitation weighs in favor of granting a motion for compassionate release and any risk of danger associated with sentence reduction would be further mitigated by supervised release. *United States v. Parker*, No. 2:98-cr-00749-CAS-1, 2020 WL 2572525, at *11 (C.D.Cal. May 21, 2020).

In *United States v. Mitchell*, 2020 WL 2770070 (E.D.Cal. May, 28, 2020), the 72 year-old defendant serving 120 months for one count of receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2), moved for an order granting early release from confinement and admission to home confinement under 18 U.S.C. § 3582(c). While the court found Mitchell had established "extraordinary and compelling reasons" within the meaning of the relevant policy statement, U.S.S.G. § 1B1.13, age, history of lung disease, tuberculosis and high blood pressure, the court denied the motion based on continued danger to the community. The court considered the fact that Mitchell was unwilling to accept responsibility for the crime, had sent "harassing" emails to pretrial services officers while he was on pretrial release, had served less than a one-third of his sentence, and had provided no information showing he had engaged in any sort of rehabilitation while incarcerated. These factors weighed strongly against granting the motion. *Id.*, at pp. *3-4. Here, the court should consider that Mr. Caputo established "extraordinary and compelling" reasons for sentence reduction under 18 U.S.C. § 3582(c), accepted responsibility, and remorse for his actions, served over half of his sentence, and engaged in rehabilitation while incarcerated, and has minimal prior criminal history, two petty theft convictions. PSR, p. 11.

The offenses of conviction were serious, and of the nature that evinces a danger, however, Mr. Caputo has already served seven years in prison, and has demonstrated rehabilitation over the years of his imprisonment[3]. The length of his imprisonment

---

[3] Research has disproven the perception that sex offenders are especially prone to recidivism. In reality, recidivism rates for sex offenses are lower than for all other major types of crime, and the U.S. Department of Justice has found that only about 3 percent of child molesters commit another sex crime within three years of being release from prison. *Pedophilia*, Psychology Today (Rev. Feb. 22, 2019), https://www.psychologytoday.com/us/conditions/pedophilia.

5

reflects the seriousness of the offenses of conviction, and is sufficient to promote respect for the law, and provides just punishment while also affording adequate deterrence to criminal conduct pursuant to 18 U.S.C. § 3553(a)(2)(A), (B).

The risk to Mr. Caputo's health if he is required to stay at FCI-Marianna would be greater than necessary and not commensurate with the "just punishment for [his] offense." See 18 U.S.C. § 3553(a). Mr. Caputo's health has been compromised in the period of time between the court's order denying the motion and the date of this motion for reconsideration: Mr. Caputo tested positive for COVID-19 January 21, 2021, even though Mr. Caputo's unit had been on quarantine following positive tests for over five inmates in his unit. Mr. Caputo's positive test results show that FCI-Marianna's efforts to protect its prisoners from infection is completely inadequate. The prison's lack of sufficient and consistent protocols has now placed Mr. Caputo's life in danger.

Staff has refused to acknowledge that Mr. Caputo suffers from medical conditions that make him more susceptible to serious consequences should he be infected with the virus. His unit counselor and other staff refused to honor the medical single cell pass prescribed by a medical expert for reasons other than COVID-19 risks. FCI-Marianna prison staff unilaterally decided that the medically prescribed single cell pass was no longer necessary, even though Mr. Caputo's medical conditions have not changed for the better but have become decidedly worse of the past year. After removing the prescribed single cell pass an inmate was placed into his cell who was COVID-19 positive, jeopardizing Mr. Caputo's health. The prison staff at FCI-Marianna do not respect the fact that Mr. Caputo's health is fragile, he suffers from migraines, painful muscle spasms and is subject to strokes. Over the past several months, since Mr. Caputo was transferred back to FCI-Marianna from USP-Yazoo City, Mr. Caputo has been threatened, harassed and mistreated, his mail, both personal and legal, has been delayed or "lost", and his legal calls are held in a staff break room that fails to

allow for a confidential attorney-client conversation.  (Mr. Caputo's counselor has complained to the undersigned that Mr. Caputo should speak to him and not his attorney about his concerns.)  Further, and most importantly, Mr. Caputo's medical care has been ignored and/or mismanaged.  No one is monitoring his condition or his medications, dosage amounts are inconsistent and irregular.  Staff have antagonized Mr. Caputo by telling him he did not need his medication and have refused to give his medication to him.  When staff did not provide him with an injection that alleviates the constant painful muscles seizures, Mr. Caputo suffered excruciating pain through his body the next day.

Mr. Caputo has tried to pursue these issues through BP8 administrative complaint forms.  Prison staff refuse to give him the forms.  All of these circumstances have caused Mr. Caputo extreme mental and physical distress, he is afraid and distrustful of those whose job it is to ensure that his health and safety are protected.

Mr. Caputo's severe, rare, complicated medical conditions are far beyond the understanding or management of FCI-Marianna, and BOP. These conditions include, Cerebral Autosomal Dominant Arteriopathy with Subcortical Infarcts and Leukoencephalopathy or "CADASIL", a genetic stroke disorder caused by obstruction of blood supply in the blood vessels, this degenerative organic brain abnormality causes infarctions, strokes and progresses to dementia; colpocephaly, a cephalic disorder involving the disproportionate enlargement of the occipital horns of the lateral ventricles of the brain, associated with multiple neurological syndromes including agenesis of the corpus callosum; Mr. Caputo has a complete absence of the corpus callosum, the band of white matter connecting the two hemispheres in the brain, resulting in vision impairments, low muscle tone, poor motor coordination, *seizures*, difficulty transferring more complex information from one hemisphere to the other, difficulty in minding subtle social cues even with a normal intelligence quotient; and Multiple Sclerosis, a condition in which the immune system eats away at the protective

covering of nerves resulting in disrupted communication between the brain and the body, symptoms include vision loss, pain, fatigue, and impaired coordination. These conditions have worsened considerably over the past year and will continually to deteriorate Mr. Caputos' health and will eventually result in dementia, and an early death.

**Conclusion**

   Considering the extraordinary circumstances present in this case, Mr. Caputo respectfully requests the court reconsider his motion for reduction of sentence to time served with 180 months of supervision imposed in the original sentence subject to the original conditions. Doc. 97.

Dated:    January 23, 2021          Respectfully submitted,

                     /s/ Carolyn D. Phillips
                     CAROLYN D. PHILLIPS
                     Attorney for Defendant

                     BRIAN CAPUTO

**LIST OF EXHIBITS**

Exhibit 11    -    Individualized Reentry Plan-Program Review (redacted)

**CERTIFICATE OF SERVICE**

COURT: UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA, FRESNO

CASE: *United States v. Brian Caputo*

CASE NO: 1:14-cr-0041 DAD

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the district court's electronic filing system on January 23, 2021.

Participants in the case who are registered CM/ECF users will be served by the district court's electronic filing system.

I further certify that one of the participants in the case is not a registered ECF user. I have mailed the foregoing document by First Class Mail, postage prepaid to:

Brian Caputo, Reg. No. 71322-097
FCI-Marianna
Federal Correctional Institution
P.O. Box 7007
Marianna, FL   32447

/s/ Carolyn D. Phillips