PHILLIP A. TALBERT
Acting United States Attorney
MICHAEL G. TIERNEY
Assistant United States Attorney
2500 Tulare Street
Suite 4401
Fresno, California 93721
Telephone: (559) 497-4000

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>    v.<br><br>BRIAN CAPUTO,<br><br>                Defendant. | CASE NO.  1:14-CR-00041 WBS-SKO<br><br>OPPOSITION TO DEFENDANT'S MOTION TO VACATE SENTENCE PUSUANT TO 28 U.S.C. § 2255 (DOC 130, 136, 138)<br><br>DATE: TBA<br>TIME: TBA<br>COURT: Hon. William B. Shubb |

Prisoner Brian Caputo moves to vacate his conviction for receipt and distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2).  Doc. 130, 136, 138 ("the Motion" or "Motion to Vacate").[1]  The Motion claims that the government fabricated evidence against Caputo by "planting" two phones on him.  Those claims have no factual support and the Court should deny the Motion.

## I.  BACKGROUND

**A.  Caputo extorts young girls into sending him sexually explicit photographs**

From approximately late 2012 to early 2014, Caputo terrorized a series of preteen and teenage girls into taking sexually explicit pictures of themselves and sending them to him.  PSR ¶¶ 4-28.

---

[1] Caputo filed a "Motion to Vacate All Charges" (Doc. 130) in May 2020.  The Court notified Caputo that it intended to construe his filing as a motion under 28 U.S.C. § 2255, unless Caputo objected.  Doc. 131.  Caputo then filed an "amended motion" and confirmed he was proceeding under § 2255. (Doc. 136).  In September 2020, Caputo filed a "memorandum" re-stating his basic claim regarding the phones and asserting various legal theories. Doc. 138 at 2-10.  This Opposition refers to the filings collectively as "the Motion" or the "Motion to Vacate" given that they all spring from the same fabricated-evidence claim.  The Opposition will cite to the various filings by their docket numbers.

Caputo did this by creating social media accounts where he claimed to be a similarly-aged girl. *Id.* One of the screen names Caputo used was "Giovanna Derann." PSR ¶ 4-14; Compl. (Doc. 1) at ¶¶ 10, 23-25, 28, 31. Caputo befriended victims, played on their trust, and then threatened them into providing sexually explicit photographs of themselves. PSR ¶¶ 4-28 He used an escalating series of threats, including threats to kidnap or harm the victims or their family members. *Id.* at ¶ 14, 20; Doc. 1 at ¶¶ 9, 12, 14.

**B.  Caputo's victims call the police; Victim SH's family provides police her two phones**

Two of Caputo's victims lived in El Paso, Texas. Doc. 1 at ¶¶ 10-11. In June 2013, a family member of one of the victims reported Caputo's conduct to local law enforcement. *Id.* at ¶ 12. El Paso Police Department Detective Robert Hanner (Hanner also served as an FBI Task Force Officer) assisted in the investigation. Redacted Extracts of TFO Hanner Report ("Hanner Rep.")[2] at 3.

On June 15, 2013, Hanner spoke with eleven-year-old victim SH,[3] along with her family. *Id.* SH's father told Hanner about the "Giovanna Derann" account Caputo had been using. Doc. 1 ¶ 10; Hanner Rep. at 3. SH's father also provided Hanner with his daughter's cell phone, a black iPhone Model A1387 (the "Black iPhone"). Doc. 1 at ¶ 10; Hanner Rep. at 3; Declaration of David Hunter ("Hunter Decl.") at ¶ 3.[4] Hanner noted that the Black iPhone was smashed because SH's father had thrown it against a wall after learning what had happened. Hanner Rep. at 3.

In view of the damage to the Black iPhone, Hanner reviewed it by using a camera system, the "Microsoft Life Cam," to record what the phone displayed. Hanner Rep. at 4. Hanner noted that it contained an email from Caputo to SH, using the "Giovanna Derann" account, containing child pornography. Hanner Rep. at 4. The phone also contained sexually explicit photographs of SH. *Id.*

Hanner continued his investigation, including by reviewing SH's Facebook account, and obtaining a search warrant for a Yahoo! email address that Caputo used. Doc. 1 at ¶ 13-14. The Yahoo! account contained hundreds of images of child pornography. Doc. 1 at ¶ 15, 17-18. These led

---

[2] Attached as Exhibit 1. Certain pages not relevant to the issues in the Motion to Vacate have been removed. The document has been redacted to preserve privacy of the victims and their families.

[3] SH was identified as Jane Doe 2 or "JD2" in the Criminal Complaint. *See* Doc. 1 at ¶ 10.

[4] Attached as Exhibit 2.

investigators to additional online accounts also filled with hundreds of images of child pornography. Doc. 1 at ¶ 22.  Investigators also obtained a search warrant for Facebook records; those records included several of Caputo's falsified accounts.  Doc. 1 at ¶ 28.  The falsified accounts contained Caputo's threats to his victims.  *Id.*  Facebook records also showed that the same internet IP address accessed the falsified accounts and Caputo's actual Facebook account.  Gov't Opp. To Caputo Mtn to Suppress (Doc. 32) at 2-3.

Hanner met again with SH's father in late June 2013.  SH's father reported that his daughter had been receiving text messages on a new cell phone.  The new messages that demanded that SH send additional sexually explicit pictures.  Hanner Rep. at 4.  SH's father gave Hanner the new phone, which was a gray Samsung model SCH-U650 (the "Gray Samsung").  Hanner Rep. at 4.  Hanner was able to use a cellphone extraction program known as Cellebrite to review the contents of the Gray Samsung.  He noted threatening text messages that appeared to be from the same person who had earlier threatened SH.  Hanner Rep. at 4.

C. **The FBI seizes Caputo's phone and he confesses to his crimes**

The investigation pointed the FBI to a residence in Arvin, California.  Doc. 1 at 27.  The FBI obtained a search warrant for that address and executed the warrant on February 28, 2014.  Doc. 1 at 30.  Caputo was at work at a local Burger King when agents arrived.  Doc. 32 at 3.  Agents went to the Burger King and Caputo agreed to return to the residence (where he lived along with his mother and other family members).  *Id.*  At the residence, agents read Caputo his *Miranda* rights.  Doc. 32 at 5.  He waived them and in a subsequent interview he confessed to using the "Giovanna Derann" profile and other internet accounts to threaten girls into sending him sexually explicit pictures of themselves.  Doc. 1 at ¶ 32.  Caputo also gave the FBI written consent to access several of his online accounts.  Doc. 32 at 5-6.  Agents seized Caputo's cell phone, which was a black Samsung, and five other items of electronics—none of them cell phones.  Doc. 32 at 6; Doc. 130 at 5.  They provided his mother a receipt for the seized items.  Motion to Vacate (Doc. 130) at 5.

D. **The FBI transmits case files and the two victim phones to California**

With the case centered in California, Hanner and the FBI's El Paso office sent items from their case files to the FBI's Bakersfield office.  An initial transmission in October 2013 included Hanner's

report. Hanner Rep. at 1. That report detailed how SH's father gave Hanner the Black iPhone and Gray Samsung. Hanner Rep. at 3-4. The government produced Hanner's report regarding the Black iPhone and Gray Samsung in April 2016.[5]

In April 2016, as the parties prepared for a potential trial, Hanner retrieved several evidence items from the El Paso Police Department's evidence room and transferred them to the FBI's El Paso office. FBI Property Documents at 1-4.[6] This included the Black iPhone and Gray Samsung. *Id.* at 1, 3. The El Paso office then transmitted them to California. *Id.* at 2; Hanner Decl. at ¶ 4. The government produced the records regarding these transfers to Caputo's counsel on or about May 4, 2016.[7]

The cover letter identified both phones as belonging to SH. May 2016 Disc. Ltr. at 2. It noted that the government was making the Gray Samsung obtained from SH available to the defense. May 2016 Disc. Ltr. at 2. The cover letter also made available the Black iPhone. *Id.* It informed Caputo's counsel that the phone had been damaged when received by law enforcement. *Id.* It noted that Hanner had taken a "Microsoft Life Cam" video of certain information on the phone, but that "Life Cam" video had subsequently been destroyed. *Id.* at 2. The letter notified Caputo's counsel that the government was making renewed efforts to forensically analyze the phone.

### E. Caputo pleads guilty, waives appeals and collateral attacks, then attacks his conviction

Caputo signed a plea agreement on May 6, 2016. Plea Agreement (Doc. 80) at 11. As part of that agreement, Caputo agreed to enter a plea of guilty to receiving and distributing child pornography in violation of 18 U.S.C.§ 2252(a)(2). *Id.* at 3. Caputo also agreed to waive his right to appeal "his plea, conviction, forfeiture order restitution imposed or sentence on any ground." *Id.* His waiver also included his agreement "not to contest his plea, conviction, forfeiture order, restitution imposed or sentence in any post-conviction proceeding, including but not limited to a proceeding under 28 U.S.C.

---

[5] Exhibit 1 is Bates numbered between Caputo – 008013 and Caputo – 008023. The government produced documents in that range on or about April 16, 2016. *See* Discovery Letter dated April 18, 2016 (Ex. 4) at 1; U.S. Attorney's Office Discovery Log (Ex. 6) at 1 ("Disc. Log").

[6] Attached as Exhibit 3.

[7] Exhibit 3 is Bates-numbered between Caputo – 008947 and Caputo – 008950. The government produced documents in this range on or about May 4, 2016. *See* Discovery Letter dated May 4, 2016 at 2 (Ex. 5); Disc. Log at 1. The discovery letter has been redacted to preserve the privacy of the victims.

GOVERNMENT'S OPPOSITION TO MOTION
UNDER 28 USC 2255

4

§ 2255 or § 2241, except for non-waivable claims." *Id.* Caputo entered his guilty plea on May 16, 2016. Doc. 81. In November 2016, then-District Judge O'Neill sentenced Caputo to 180 months of imprisonment. Judgment and Commitment (Doc. 97) at 1-2.

Notwithstanding his plea of guilty and appellate waiver, Caputo challenged his conviction, claiming that a medical condition rendered his plea involuntary. *United States v. Caputo*, 770 Fed. App'x 400, 401-02 (9th Cir. 2018). The Court of Appeals rejected that claim. *Id.* He also attempted to challenge the seizure of his own cell phone (the Black Samsung); the Court of Appeals held that Caputos's appellate waiver barred that claim. *Id.* at 402.

### F. The FBI mistakenly conflates the victim's phones with evidence seized from Caputo

While Caputo's appeal was pending, the FBI made preparations to close the case. Hunter Decl. at ¶ 5. Those preparation included a letter to Caputo notifying him that he or is family members could submit a claim for items acquired "[o]n February 28, 2014" (the date the FBI executed the search warrant on Caputo's residence). Doc. 130 at 4. The letter included three items that were seized during the search (a battery charger, a wireless router, and a modem). But due to apparent administrative error, it also included SH's Black iPhone and her Gray Samsung. Doc. 130 at 4; Hunter Decl. at ¶ 6.

Fortunately, because the appeal remained pending, the FBI ultimately did not release any of the items to Caputo's family. Hunter Decl. at ¶ 6. The FBI is making efforts to ensure that SH's phones will be removed from any future letters to Caputo and his family regarding the return of property. Hunter Decl. at ¶ 7.

## II. ARGUMENT

### A. No factual support exists for the Motion's allegation of fabricated evidence

From their earliest stage onward, courts may dismiss motions made under 28 U.S.C. § 2255 if "it plainly appears from the motion, the attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b), Rules Governing Section 2255 Proceedings. Even after the government files a responsive brief, the Court may deny a § 2255 motion without factual support. *United States v. Vega*, No. 2:06-CR-0236 GEB KJN, 2013 WL 2147191, at *3, 6-8 (E.D. Cal. May 15, 2013) (citing Rule 4(b) and finding that movant had not adequately demonstrated prejudice to support an ineffective assistance of counsel claim). The Motion's claim of fabricated evidence lacks

GOVERNMENT'S OPPOSTION TO MOTION
UNDER 28 USC 2255

5

factual support, and the Court should therefore deny it.

The Motion charges that law enforcement fabricated evidence against Caputo by attributing the Black iPhone and Gray Samsung to him since they were recovered during the search of his residence,[8] but the records belie that assertion. Law enforcement correctly noted the phones belonged to victim SH and her family from the moment Hanner obtained them. *See* Hanner Rep. at 3. That knowledge transferred to the FBI's Bakersfield office months before its personnel searched Caputo's residence. *Id.* at 1. The prosecution team also transmitted that knowledge to Caputo's defense team. Weeks before Caputo pleaded guilty, the government described the Black iPhone and Gray Samsung as having been obtained from victim SH. May 2016 Disc. Ltr. at 2.

FBI documents also contradict the notion that the phones were seized from Caputo or his residence during the February 2014 search. The FBI provided a property receipt to Caputo's mother detailing the six items seized; the only phone included was Caputo's black Samsung (boostmobile). Doc. 130 at 5. FBI personnel reviewed the form with Caputo's mother, and she then signed the receipt. *Id.*; FBI Report of Search at 1.[9] The FBI's record of items collected matches the receipt. FBI Items Collected List at 1.[10] The record demonstrates no document from the time claiming to have recovered three phones from Caputo. It is true that the June 2018 FBI letter to Caputo indicates that the FBI acquired the Gray Samsung and Black iPhone on the date the FBI searched his residence. Doc. 130 at 4. But the letter is manifestly inaccurate: the Black iPhone and Gray Samsung were in an El Paso Police Department evidence room until mid-2016. FBI Property Documents at 3-4. Reviewing the available records together, it appears the February 2018 letter reflected an administrative error, not an attempt to fabricate evidence. *See* Hunter Decl. at ¶ 6.

In fact, the record demonstrates how difficult it would have been for law enforcement to assert that the Black iPhone and Gray Samsung belonged to Caputo. Any such attempt would have contradicted records held by the El Paso Police Department (*See* Hanner Rep. at 1), the FBI's El Paso

---

[8] As the Motion puts it, "The 'fabricated evidence' here is the government's false claim that Brian possessed three cell phones containing illegal images of child pornography" (Doc. 138 at 5).

[9] Attached as Exhibit 7.

[10] Attached as Exhibit 8.

Office (*See* FBI Property Documents at 1-2), the FBI's Bakersfield office (*See* Hanner Rep. at 1), and Caputo's mother (*See* Doc. 130 at 5). Caputo cannot found a § 2255 motion on such implausible claims. *See United States v. Abpikar*, No. 08-CR-00560-EJD, 2018 WL 3872796, at *10 (N.D. Cal. Aug. 15, 2018) (denying evidentiary hearing to § 2255 movant who made implausible claims). The record therefore strongly contradicts the Motion's assertion that the prosecution team fabricated evidence. This Court should deny the fabrication of evidence claim. As explained in further detail below, the failure of the central assertion underlying each of the Motion's grounds for relief is sufficient to doom the entire Motion to Vacate.

**B. Without any factual proof, Caputo's remaining grounds for relief must fail**

    1. <u>The *Brady* claim is implausible and the Motion cannot establish prejudice</u>

The Motion to Vacate's *Brady* claim relies on proof of evidence fabrication (*see* Doc. 138 at 5); because there is no evidence of such fabrication, the Court should deny it. Fabrication of evidence claims fall within the scope of *Brady* because fabrication could have "both exculpatory and impeachment value." *Atkins v. Cty. of Riverside*, 151 Fed App'x 501, 506 (9th Cir. 2005). And *Brady* claims can survive collateral-attack waivers—but only if they are based on fact: "Rampant speculation does not support a viable *Brady* claim." *United States v. Adamic*, No. CR S-02-0430FCDGGHP, 2006 WL 2507439, at *3, 5 (E.D. Cal. Aug. 28, 2006). Because the Motion to Vacate presents no reason to believe that evidence fabrication occurred (*see* Section II.A) the Court should reject the *Brady* claim and deny the Motion to Vacate.

Nor would any such fabrication have been material. To merit relief, the Motion to Vacate would have to demonstrate not only that the prosecution team fabricated evidence against Caputo, but that the fabrication was material. *See Simons v. Newland*, No. C 00-3317 TEH (PR), 2002 WL 31689381, at *2 (N.D. Cal. Nov. 25, 2002) (applying materiality standard to claim that state officer fabricated evidence). Where a defendant pleaded guilty, a Brady fabrication claim would have to demonstrate that but for the fabrication, the defendant would have foregone his guilty plea and proceed to trial. *See Sanchez v. United States*, 50 F.3d 1448, 1454 (9th Cir. 1995). In fact, the phones in question appear to have limited evidentiary value and the Motion therefore cannot demonstrate materiality. In fact, analyzing the materiality of the Black iPhone and Gray Samsung not only negates materiality, it shows why the

Motion's underlying claim about evidence fabrication is implausible.

The Black iPhone possessed limited evidentiary value. It was damaged by SH's father—apparently so damaged that traditional forensic analysis was impossible. May 2016 Disc. Ltr. at 2. TFO Hanner did observe a few images of possible child pornography on the phone. Hanner Rep. at 4. But even that evidence was of uncertain value because Hanner had lost the record of those photographs. May 2016 Disc. Ltr. at 2. The Gray Samsung fared little better. Hanner's report did not reveal any images of child pornography, only some text messages that may have been from Caputo. Hanner Rep. at 4. And what evidentiary value the phones had came from their connection to SH—claiming that they belonged to Caputo would have undermined that value.[11] So the phones offered little incentive as an evidentiary item to plant on Caputo.

In contrast to the weak evidentiary value of the phones, investigators had very strong evidence of Caputo's crime from other source. Investigators had seen at least hundreds of images of suspected child pornography in accounts linked to Caputo—over a thousand possible photographs and 146 videos in one Yahoo! account alone. Doc. 1 at ¶ 14. Over 600 in another. *Id.* at ¶ 18. That is not to mention the records of the "Giovanna Derann" Facebook accounts with their images of child pornography and threatening messages (linked back to Caputo through internet addresses). *Id.* at ¶ 25, 28. And of course, Caputo confessed to extorting photographs, using the Derann account and one of the email addresses; he also confessed that his own cell phone contained hundreds of sexually explicit photographs of girls aged 11-15. *Id.* at ¶ 31-32. The FBI saw some of this child pornography on Caputo's phone even while on scene. *Id.* at ¶ 33.

The Motion to Vacate contains no reason why anyone would risk undermining a case involving a confession and ample amounts of forensic evidence by falsely claiming that the Black iPhone and the Gray Samsung were Caputo's. Such an action would run a very high risk of detection because it contradicted a bevy of law enforcement's own records and would result in virtually no evidentiary gain—indeed, a net evidentiary loss. And even if the Motion did offer some evidence that this occurred,

---

[11] For example, if the Gray Samsung belonged to SH, the text messages could supply evidence that Caputo threatened a victim. But if the phone belonged to Caputo, it would offer no proof that Caputo sent anything to a victim. Any threatening message would imply that Caputo for some reason sent himself a threatening message.

it cannot offer a plausible theory for why Caputo would have ignored all that remaining evidence if the phones were properly attributed to the victims and chosen to risk trial.   The Motion's *Brady* claim accordingly has no factual support and the Court should deny the Motion.

2.   The coercion claim is foreclosed and lacks factual support

The Motion to Vacate claims that Caputo was forced to plead guilty because of the "planting" of the phones in his possession.  *See* Doc. 138 at 4 ("Relying on the planted evidence and falsified statements, federal prosecutors pursued the harshest punishments available against Brian").  As an initial matter, Caputo litigated the voluntariness of his plea agreement and guilty plea on direct appeal.  *See* 770 Fed. App'x at 401-02.  Having litigated it once, Caputo is not entitled to challenge voluntariness again.  *United States v. Hayes*, 231 F.3d 1132, 1139 (9th Cir. 2000).  So his claim is foreclosed and the Motion should be denied.

Even if Caputo were able to bring a coercion claim, he would need to present a strong factual show, because he expressly disavowed during the plea colloquy that any coercion occurred.  May 16, 2016 Change of Plea Hrg. Tr. at 5;[12] *Hanson v. United States*, No. CR 04-67-02-MO, 2006 WL 696267, at *5 (D. Or. Mar. 14, 2006) (denying § 2255 motion asserting coercion; finding no reason to credit the assertions in the § 2255 motion against the statements made during the plea colloquy).  The Motion to Vacate cannot meet this standard because it offers no proof that evidence was ever fabricated, so he cannot prevail against his statements made during the change of plea hearing.

But the claim suffers another fatal issue over and above that deficiency.  Caputo can point to no communication prior to the guilty plea in which the government said it had three of his phones.  The earliest communication he points to occurred in June 2018, two years after he pleaded guilty.  Doc. 130 at 5.  In fact, the government communicated the opposite.  It disclosed the reports showing that the Black iPhone and Gray Samsung belonged to SH.  *See* Section I.D above.  When it invited Caputo's counsel to review evidence, it noted only one phone of Caputo's, and several belonging to the victims (including the two at issue here that the government said belonged to SH).  *Id.*  The government never attempted to make Caputo believe it had three of his phones or to use that assertion in plea negotiations.

---

[12] "Q: Is anybody forcing you or threatening you in any way to get you to do this?  A: No, sir."

His claim of an involuntary guilty plea should be rejected for this further factual inaccuracy and the Court should deny the Motion to Vacate

### 3. The Motion's ineffective assistance claim has no merit

As with his other grounds for relief, Caputo's claim for ineffective assistance of counsel fails because it lacks factual support; it also fails because he cannot demonstrate prejudice.  Collateral-attack waivers do not bar ineffective-assistance claims that directly implicate the voluntariness of a guilty plea. *United States v. Malauulu*, No. 2:15-CR-00124-KJM, 2020 WL 3642611, at *3 (E.D. Cal. July 6, 2020). Such claims must, however, have a sufficient basis, as with all § 2255 claims.  And they must meet the ordinary ineffective assistance of counsel test, that (1) "counsel's performance was so seriously deficient that counsel was not functioning as the 'counsel guaranteed by the Sixth Amendment; and (2) . . . [that] counsel's deficient performance was prejudicial to the outcome. *Id.* at * 2, *quoting Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Here, prejudice means a reasonable probability that except for the alleged errors, Caputo would have decided to go to trial.  *United States v. Guesar*, No. CR07-1135PHX-NVW, 2009 WL 2259714, at *5 (D. Ariz. July 27, 2009).  But Caputo can make none of the required showings.

Regarding deficient performance, the Motion to Vacate essentially claims that defense counsel should have discovered that the government had planted the Black iPhone and Gray Samsung on Caputo.  Doc. 138 at 9.  But that assertion is inaccurate.  No amount of research would have reached that conclusion—it would only have uncovered the several documents disproving that premise.  Regarding prejudice, the Motion to Vacate does baldly assert Caputo would have chosen trial.  Doc. 138 at 4-5. But it does not support that assertion with any facts.  The Motion speculates that proving the two phones did not belong to Caputo would have meant "the charges against [Caputo] could not stand." Doc. 138 at 8.  That is not so.  As detailed above in Section II.B.1, the case against Caputo was very strong— including his confession, his own cell phone containing child pornography, and multiple internet accounts linked to him with thousands of images of child pornography.  Caputo's claim that he would have elected trial simply because the Black iPhone and Gray Samsung could not be attributed to him does not withstand scrutiny.  Thus the Court should deny the Motion to Vacate's ineffective assistance of counsel claim and deny the Motion in its entirety.

    4. <u>One of the Motion's claims cannot be asserted under 28 U.S.C. § 2255</u>

The Motion claims that the alleged planting of the two phones creates a malicious prosecution claim. Doc. 138 at 5. Malicious prosecution claims, however, are civil in nature and cannot be raised through motions under 28 U.S.C. § 2255. *United States v. Woods*, No. 212CR330WBSEFBP, 2020 WL 2062175, at *4 (E.D. Cal. Apr. 29, 2020). The Court should therefore deny the Motion's malicious prosecution claim, along with the rest of the Motion.

### III.   CONCLUSION

The Motion to Vacate attempts to turn an administrative error into a far-reaching, implausible effort to attribute two phones to Caputo and to use that fabricated evidence to extort a guilty plea. The reality is much more prosaic. The phones in question belonged to victim SH. No member of law enforcement or the prosecution attempted to claim they were recovered from Caputo, nor to coerce his plea of guilty. Because the Motion to Vacate is devoid of factual support, the Court should deny it.

Dated: March 29, 2021                                              PHILLIP A. TALBERT
                                                                                             Acting United States Attorney

                                                                 By:  /s/ MICHAEL G. TIERNEY
                                                                       MICHAEL G. TIERNEY
                                                                       Assistant United States Attorney

    4.  <u>One of the Motion's claims cannot be asserted under 28 U.S.C. § 2255</u>

The Motion claims that the alleged planting of the two phones creates a malicious prosecution claim. Doc. 138 at 5. Malicious prosecution claims, however, are civil in nature and cannot be raised through motions under 28 U.S.C. § 2255. *United States v. Woods*, No. 212CR330WBSEFBP, 2020 WL 2062175, at *4 (E.D. Cal. Apr. 29, 2020). The Court should therefore deny the Motion's malicious prosecution claim, along with the rest of the Motion.

### III.   CONCLUSION

The Motion to Vacate attempts to turn an administrative error into a far-reaching, implausible effort to attribute two phones to Caputo and to use that fabricated evidence to extort a guilty plea. The reality is much more prosaic. The phones in question belonged to victim SH. No member of law enforcement or the prosecution attempted to claim they were recovered from Caputo, nor to coerce his plea of guilty. Because the Motion to Vacate is devoid of factual support, the Court should deny it.

Dated: March 29, 2021                    PHILLIP A. TALBERT
                                          Acting United States Attorney

                            By:  /s/ MICHAEL G. TIERNEY
                                  MICHAEL G. TIERNEY
                                  Assistant United States Attorney