1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                           EASTERN DISTRICT OF CALIFORNIA

10

11    UNITED STATES OF AMERICA,                    Case:  1:14-CR-00041-JLT-SKO-1

12              Plaintiff,                          ORDER (1) DENYING IN PART AND
                                                    DISMISSING IN PART MOTION TO
13         v.                                       VACATE, SET ASIDE OR CORRECT
                                                    SENTENCE PURSUANT TO 28 U.S.C. §
14    BRIAN CAPUTO,                                 2255 and (2) DECLINING TO ISSUE
                                                    CERTIFICATE OF APPEALABILITY
15              Defendant.
                                                    (Docs. 130, 136)
16

17         The Court entered judgment entered against Brian Caputo after he pled guilty to one count

18   of receipt or distribution of material involving the sexual exploitation of minors in violation of 18

19   U.S.C. § 2252(a)(2).[1]  (*See* Docs. 80, 81, 97, 138, 159, 171.)  He has now filed a *pro se* motion

20   seeking to vacate, set aside, or correct the judgment against him pursuant to 28 U.S.C. § 2255.

21   (Doc. 130; Doc. 136.).  Caputo argues that his plea was not knowing and voluntary and should be

22   set aside.  The government opposes the motion (Doc. 168).  For the reasons explained below,

23   Caputo's motion is **DENIED**, and the Court declines to issue a certificate of appealability.

24                                   **BACKGROUND**

25         In 2014, Caputo was charged in a two-count indictment with Sexual Exploitation of a

26

27   [1] The motion filed on May 12, 2020 was timely pursuant to 28 U.S.C. § 2255(f) and the amendment thereto filed on
     September 4, 2020 (though untimely pursuant to § 2255(f)) relates back to the timely filed motion.  *See* Fed. R. Civ.
     P. 15(c); *Mayle v. Felix*, 545 U.S. 644, 650 (2005); Rule 3, 28 U.S.C.A. foll. § 2255; *see also Anthony v. Cambra*,
28   236 F.3d 568, 576 (9th Cir. 2000); *United States v. Jackson*, 21 F.4th 1205, 1216 (9th Cir. 2022) (*pro se* motions
     from prisoners are to be liberally construed).  The government does not argue otherwise.

Minor in violation of 18 U.S.C § 2251(a) ("Count One") and Receipt and/or Distribution of Child Pornography in violation of 18 U.S.C. § 2252(a)(2) ("Count Two").  (*See* Docs. 1, 2, 3, 9, 11.) Following appointment of trial counsel, Caputo entered a plea of not guilty.  (*See* Docs. 4, 6, 10, 12.)

The Court observes that Caputo admitted to law enforcement his years' long involvement with child pornography starting at age sixteen.  (*See* Doc. 1 at 10; Doc. 35 at 25–26.)  During his interview with the FBI on February 27, 2014, Caputo admitted to:

> [L]ooking at images of naked minor girls as recently as last week on his cell phone. He further admitted to using the Facebook account Giavanna Derann and used the account to contact minor females. He also informed law enforcement that Homeland Security visited him in January 2014 and asked him about viewing child pornography. [Movant] denied involvement with child pornography when asked about it by Homeland Security. He said he denied such involvement because he was embarrassed and ashamed. He informed FBI that he stopped looking at images on his phone after the visit from Homeland Security (for a time) and told FBI he had about 400-500 images and some videos of young girls on his phone. [Movant] further informed law enforcement that he would threaten girls on chat web sites by telling them he would send pictures of their friends through Facebook and embarrass them. The threats worked many times and he obtained many naked images and videos of young girls "playing with themselves" this way.

(Doc. 32, at 5.)

The probable cause affidavit attached to the criminal complaint outlines over a thousand images of child pornography that Caputo received under threat from one or more minor(s) and stored on his own cellphone, as well as Yahoo!, Dropbox, and Facebook accounts.  (*See* Doc. 1 at 5–11; Doc. 32-1 at 10–15; Doc. 65 at 2–14.)  Other government filings in the case suggest these accounts contained thousands more pornographic images and over a hundred such videos.  (*See* Doc. 1 at 4–11; Doc. 32 at 2–3; *see also* Doc. 32-1 at 11–15; Doc. 91 at 4–10.)  In Caputo's sentencing memorandum, trial counsel stated that at the time of his arrest, Caputo had between 300 and 600 images in his possession, stored on his cell phone.  (Doc. 92 at 9.)

In his plea agreement, Caputo agreed that:

> [O]n or between December 2008 and February 21, 2014, in Kern County, within the State and Eastern District of California and elsewhere, [he] did knowingly receive and distribute one or more

2

visual depictions . . . which involved a minor engaging in sexually explicit conduct and the depiction was of such conduct, specifically: [Caputo] received in his email account and on a cellular telephone at least one image file which contained a visual depiction . . . of a minor engaged in sexually explicit conduct, and was of such conduct . . . [and movant] distributed one or more such visual depictions . . . to a minor, intending to persuade, induce, entice, and coerce the minor to engage in prohibited sexual conduct, and specifically, the production of additional child pornography.

[Caputo] possessed at least 300 such images.

(Doc. 80 at 8; *accord* Doc. 91 at 4–10.)

Furthermore, in the plea agreement, the parties agreed that: (1) the government would dismiss Count One, (2) Caputo would plead guilty to Count Two, and (3) Caputo would waive any rights to appeal and/or collaterally attack his plea, conviction, forfeiture order, restitution, or sentence, with an exception for non-waivable claims.  (Doc. 80.)  The Court accepted Caputo's change of plea and sentenced him on Count Two to 180 months imprisonment with a special assessment of $100 and 180 months of supervised release.  (Doc. 93.)  The Court entered judgment in the case on November 16, 2016.  (Doc. 97.)

The United States Court of Appeals for the Ninth Circuit affirmed the judgment and sentence on appeal, finding that: (1) Caputo knowingly and voluntarily entered into the plea agreement and waived any right to challenge law enforcement's search and seizure, (2) the plea agreement's appeal waiver is valid, and (3) the district court did not err in failing to order a competency hearing *sua sponte*.  *United States v. Caputo*, 770 Fed. App'x 400, 401 (9th Cir. 2019) [2]; (*see also* Doc. 128.)

On May 12, 2020, Caputo filed the underlying motion to vacate all charges.  (Doc. 130.)  The next day, the Court issued a notice of its intent to re-characterize the motion as brought under § 2255.  (Doc. 131.)  Caputo then filed an amendment to the underlying motion which cites § 2255 as the basis for relief.  (Doc. 136.)  On September 30, 2020, Caputo's mother, Patricia Caputo, filed a memorandum supporting the § 2255 motion on Caputo's behalf as his putative "next friend".  (Doc. 138.)  Finally, Caputo submitted a supplemental memorandum supporting

---

[2] The appellate panel did not consider whether the plea agreement's appellate waiver, once determined to be valid and enforceable, precludes a challenge to the district court's decision not to order a competency hearing *sua sponte*.  *Caputo*, 770 F. App'x at 402.

3

1  his motion on January 4, 2021; this supplemental restated the memorandum previously filed by

2  his mother.  (Doc. 159.)

3       Caputo's motion argues that he has uncovered new evidence withheld by the government.

4  Specifically, he alleges that that two cell phones—a grey Samsung and a black iPhone—and their

5  contents (collectively the "Cell Phones") were seized from him and utilized by the prosecution

6  against him, but "can now be proven to not be [his]," and constitute "illegally obtained" evidence

7  that "should legally be stricken" notwithstanding his guilty plea.  (Doc. 130 at 2–3; *see also* Doc.

8  159 at 8 citing *Brady v. United States*, 397 U.S. 742, 747 (1970) (guilty pleas are valid if both

9  voluntary and intelligent), and *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (prosecution's

10  suppression of favorable material evidence violates due process).)

11       Caputo claims that the Cell Phones were planted by the government and contain fabricated

12  evidence that was used to coerce his guilty plea notwithstanding his actual innocence.  (Doc. 136

13  at 5, 7.)  Caputo supports his motion by pointing to: (i) a U.S. Department of Justice ("DOJ")

14  receipt for property seized from him during a search of his apartment on February 28, 2014 at

15  0910 hours, File # 305H-SC-4480087, which does not include the Cell Phones, and (ii) a DOJ

16  letter dated June 27, 2018 regarding forfeiture of property seized under DOJ File # 305H-SC-

17  4480087, which does include the Cell Phones.  (*See* Doc. 130, at 1–2, 4–5; Doc. 159, at 7–8.)

18  Caputo argues that in light of this new evidence, the guilty plea he entered with the advice of

19  appointed trial counsel—but without knowledge of the "new evidence"—is invalid and void.

20  (Doc. 136 at 5, 7.)

21  **LEGAL STANDARD**

22       A person in custody under sentence of a federal court "may move the court which

23  imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a); *see also*

24  *United States v. Hayman,* 342 U.S. 205, 217 (1952).  The permissible grounds for a motion

25  under § 2255 are "that the sentence was imposed in violation of the Constitution or laws of the

26  United States, or that the court was without jurisdiction to impose such sentence, or that the

27  sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral

28  attack . . ."  28 U.S.C. § 2255(a).

To warrant relief, the prisoner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("*Brecht's* harmless error standard applies to habeas cases under § 2255[.]"). Relief is warranted only upon the showing of "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 345–46 (1974), citing *Hill v. United States*, 368 U.S. 424, 428–29 (1962); *see also Harrison v. Ollison,* 519 F.3d 952, 954 (9th Cir. 2008) ("A federal prisoner challenging the legality of a sentence must generally do so by a motion pursuant to 28 U.S.C. § 2255").

As a *pro se* litigant, Caputo's pleadings are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). However, the requirement of liberal construction does not mean that a court can ignore an obvious failure to allege facts that set forth a cognizable claim. "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994); *see also Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989) (stating that "vague and conclusory" allegations in a § 2255 motion do not support relief); *Neighbors v. United States*, 457 F.2d 795, 795 (9th Cir. 1972) (affirming denial of § 2255 motion where the allegations regarding ineffective assistance of counsel were entirely conclusory and without support in the record).

Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255). The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996). To earn the right to a hearing, therefore, the movant must make specific factual allegations which, if true, would entitle him to relief. *Id.* Mere conclusory statements in a § 2255 motion do not justify a hearing. *United States v. Hearst*, 638 F.2d 1190,

1   1194 (9th Cir. 1980).

2        If a court finds that relief is warranted under § 2255, it must "'vacate and set the judgment

3   aside'" and then do one of four things: "'discharge the prisoner or resentence him or grant a new

4   trial or correct the sentence as may appear appropriate.'"  *United States v. Barron,* 172 F.3d 1153,

5   1157 (9th Cir.1999) (quoting 28 U.S.C. § 2255).

6                                  **ANALYSIS**

7        Caputo's motion argues that his guilty plea was involuntary because the government used

8   fabricated and planted evidence to "coerce" his guilty plea for a crime "in which he is actually

9   innocent."  (Doc. 138 at 3.)  The Court addresses each issue raised in Caputo's motion in turn.

10  **I.       Preliminary Matters: Oral Hearing and "Next Friend" Status**

11       Caputo requests an oral hearing on his § 2255 motion.  (*See* Doc. 159 at 17; Doc. 171 at 2,

12  9.)  He suggests there are disputed issues of fact raised by the newly discovered Cell Phone

13  evidence allegedly used to coerce his guilty plea.  (*See* Doc. 171 at 2–4, citing *Hill v. Lockhart*,

14  474 U.S. 52, 59 (1985); *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017).) But a § 2255 motion

15  does not automatically entitle a movant to a hearing.  A court need not hold an evidentiary

16  hearing if the allegations are palpably incredible or patently frivolous, or if the issues can be

17  conclusively decided on the basis of the evidence in the motion, files, and records.  *Blackledge v.*

18  *Allison,* 431 U.S. 63, 76, 80–82 (1977); 28 U.S.C. § 2255(b); *see also United States v. Mejia-*

19  *Mesa,* 153 F.3d 925, 929 (9th Cir. 1998) (noting that a "district court has discretion to deny an

20  evidentiary hearing on a § 2255 claim where the files and records conclusively show that the

21  movant is not entitled to relief").

22       The district court exercises its discretion and common sense in determining whether a

23  hearing is necessary.  *U.S. v. Tate*, 523 F. Supp. 2d 165, 169 (D. Conn. 2007); *see also U.S. v.*

24  *Martinez*, 475 F. Supp. 2d 154, 161 (D. Conn. 2007) (a district court is permitted to dispose of a

25  motion to vacate without hearing where the case records demonstrate the defendant's claims are

26  bereft of merit or where the case records, expanded by documentary evidence submitted by the

27  parties including, for example, letters and affidavits, render a full testimonial hearing

28  unnecessary).  Particularly in deciding a § 2255 claim of ineffective assistance of counsel in the

context of a guilty plea, a district court may rely on the court record, including transcripts of the plea and sentencing hearings, in lieu of holding a live hearing on the claim. *U.S. v. Shah*, 878 F.2d 1156, 1160 (9th Cir. 1989).

The Court finds that an oral hearing is not necessary in this case because the undisputed facts and evidence before it conclusively show that Caputo is not entitled to relief and the motion may be denied as a matter of law. *See United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (defendant filing a motion to vacate is entitled to an evidentiary hearing unless the motion and the files and records of the case conclusively show that the defendant is entitled to no relief); *see also U.S. v. Rodriguez-Vega*, 797 F.3d 781, 791 (9th Cir. 2015) (citing *Blackledge v. Allison*, 431 U.S. at 80–83) ("An oral hearing is not necessary in all cases."); *cf. United States v. Werle*, 35 F.4th 1195, 1202 (9th Cir. 2022) (evidentiary hearing necessary on § 2255 motion to determine factual questions underlying *Strickland's* prejudice prong); *Iaea v. Sunn*, 800 F.2d 861, 865–66 (9th Cir. 1986) (remanding "for an evidentiary hearing to determine whether there is a reasonable probability Iaea would not have pled guilty absent counsel's erroneous advice").

Caputo also, in connection to his § 2255 motion, objects to the Court's prior order barring his mother, Patricia Caputo, from signing and submitting filings on his behalf in this proceeding as his "next friend." (*See* Doc. 153; Doc. 159 at 1–7; *see also* Docs. 138, 144, 153.) He argues the Court erred by ruling that his mother, a non-attorney, could not represent him in this proceeding. (*Id.*)

The record reflects that on November 16, 2020, the Court denied Caputo's request to permit his mother to sign and file documents on his behalf in this proceeding, stating that:

> There is no recognized procedure that would permit the court to grant this request. Ms. Caputo cannot proceed as defendant's "next friend" because she is not an attorney. *See Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008) ("courts have routinely adhered to the general rule prohibiting pro se plaintiffs from pursuing claims on behalf of others in a representative capacity"). Although the federal habeas corpus statute permits a "next friend" to pursue a habeas action on behalf of another in certain circumstances, see 28 U.S.C. § 2246, the statute does not authorize the "next friend" to proceed without an attorney. *See Lovett v. Adams*, No. EDCV 18-00338-MWF (E), 2018 WL 3239939, at *1 (C.D. Cal. June 28, 2018) (citing *Stoner v. Santa Clara County Office of Educ.*, 502 F.3d 1116, 1127 (9th Cir. 2007) (although False Claims Act authorized a relator to

bring a qui tam action on behalf of the government, statute did not authorize relator to proceed pro se); *Weber v. Garza*, 570 F.2d 511, 514 (5th Cir. 1978) ("individuals not licensed to practice law by the state may not use the 'next friend' device as an artifice for the unauthorized practice of law")).

(Doc. 153 at 2–3.)

The Court interprets Caputo's objection to this order as a request that the Court reconsider its prior findings. Although the Federal Rules of Criminal Procedure do not expressly authorize motions for reconsideration, the Ninth Circuit has "approved of the judicial economy" of motions for reconsideration in the appropriate circumstances. *United States v. Rabb*, 752 F.2d 1320, 1322 (9th Cir. 1984), *abrogated in part on other grounds by Bourjaily v. United States*, 483 U.S. 171 (1987). A motion for reconsideration of a nonfinal order in a criminal case is a power within the court's "inherent jurisdiction." *United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000). "No precise 'rule' governs the district court's inherent power to grant or deny a motion to reconsider a prior ruling in a criminal proceeding." *United States v. Lopez-Cruz*, 730 F.3d 803, 811 (9th Cir. 2013). It is instead a matter of discretion. *Id.*

Both "simple mistakes" and "shifting precedent" might justify reconsideration of a nonfinal order. *See Martin*, 226 F.3d at 1049. This Court's local rules also impose requirements on parties who request reconsideration in criminal cases. *See* E.D. Cal. L.R. 430.1(i). Among other things, a motion for reconsideration must identify what "new or different facts or circumstances" support the motion "or what other grounds" might warrant reconsideration *Id.* 430.1(i)(3). But as is true of motions for reconsideration in civil cases, motions for reconsideration in criminal cases are almost always denied when they rest on arguments or evidence the moving party previously raised or could have raised and denial would not cause manifest injustice. *See Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California*, 649 F. Supp. 2d 1063, 1069 (E.D. Cal. 2009).

The Court has considered Caputo's objection, construed as a request for reconsideration, and finds that it lacks merit. Caputo's argument and authority do not compel the Court to reach a different conclusion than that reached in the Order it issued on November 16, 2020. Caputo's reliance upon *Whitmore v. Arkansas*, 495 U.S. 149 (1990) and *Cardin v. United States*, 947 F.3d

8

1   373 (6th Cir. 2020) in support of the objection is misplaced.  The *Whitmore* Court rejected next

2   friend status on the basis of defendant's competent wavier of his right to appeal and ability to

3   proceed on his own behalf.  495 U.S. at 163–66.  The court there had no occasion to consider the

4   *pro se* status of the putative next friend.  Similarly, the Sixth Circuit in *Cardin*, reversed the

5   district court's denial of next friend status but did not consider the *pro se* status of the putative

6   next friend, 947 F.3d at 376–77.  Furthermore, in this district:

> Any individual who is representing himself or herself without an attorney must appear personally or by courtesy appearance by an attorney admitted to the Bar of this Court and may not delegate that duty to any other individual, including husband or wife, or any other party on the same side appearing without an attorney. Any individual representing himself or herself without an attorney is bound by the Federal Rules of Civil or Criminal Procedure, these Rules, and all other applicable law.

12   E.D. Cal. L. R. 183(a); *see also* E.D. Cal. L.R. 400 (a).  Caputo has not demonstrated the Court

13   erred legally or factually in ruling that he may not be represented in this proceeding by a non-

14   attorney such as his mother.  *See Simon*, 546 F.3d at 664–65 (citing collected cases).

15        For the reasons stated, Caputo's objection to the Court's prior order denying "next friend"

16   status is dismissed.  Even so, in light of Caputo's *pro se* status and the government's failure to

17   raise the issue in its filings, the Court has considered the memorandum in support of the motion

18   submitted by his mother as next friend (Doc. 138), which is restated in the Supplemental

19   Memorandum he himself filed on January 4, 2021 (*see* Doc. 159 at 1, 7).

20   **II.      Insufficient Evidence and Actual Innocence**

21        Caputo briefly challenges his conviction on the basis that he is actually innocent and that

22   the government lacked sufficient evidence against him.  (Docs. 138 at 5; 159 at 7; 171 at 7–8.)[3]

23   Insufficient evidence claims may not be brought in § 2255 motions.  *See United States v. Berry*,

24   624 F.3d 1031, 1038 (9th Cir. 2010) (movant's "evidence-based" claim that "called into doubt the

25   overall weight of the evidence against him" is not cognizable in § 2255 motion); *see also Barkan*

26   *v. United States*, 362 F.2d 158, 160 (7th Cir. 1966) ("a collateral proceeding under § 2255 cannot

---

[3]  The Court declines to construe the insufficiency of evidence claim as a motion for new trial pursuant to Fed. R. Crim. P. Rule 33 because a new trial motion is untimely (Rule 33(b)(1)), and in any event the interest of justice would not be served by relief thereon.

be utilized in lieu of an appeal and does not give persons adjudged guilty of a crime the right to have a trial on the question of the sufficiency of the evidence or errors of law which should have been raised in a timely appeal"); *United States v. Collins*, No. C 97-1854 SI, 1999 WL 179809, at *12 (N.D. Cal. Mar. 25, 1999) (insufficiency of the evidence is not a cognizable attack under § 2255).

As to actual innocence, Caputo does not make any factual showing in support of his claim; he merely declares his innocence and references the allegedly problematic Cell Phone evidence. (*See* Doc. 138 at 5; Doc. 159 at 7.)  "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley,* 523 U.S., at 623-24, citing *Sawyer v. Whitley,* 505 U.S. 333, 339 (1992); *see also Alaimalo v. United States*, 645 F.3d 1042, 1047 (9th Cir. 2011) ("To establish actual innocence for the purposes of habeas relief, a petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.").  Caputo falls far from establishing actual innocence.  To the contrary, Caputo spoke during his sentencing to acknowledge his wrongs and apologize to the Court and the victims for them.  (Doc. 113 at 16–19.)  The Court therefore places little to no weight on Caputo's innocence claim throughout its analysis of remaining issues.

**III.    Prosecutorial Misconduct**

Caputo claims that the government fabricated and planted false evidence against him and then did not disclose their actions, which may have constituted exculpatory evidence, thereby violating Caputo's due process rights and rights under *Brady v. Maryland*.  Specifically, Caputo points to the government's June 27, 2018 letter regarding forfeiture of property seized during the FBI's February 28, 2014 search of Caputo's apartment (DOJ File # 305H-SC-4480087), which falsely lists the Cell Phones among the property seized.  Caputo argues that this letter demonstrates that the government fabricated false evidence that Caputo owned and possessed the Cell Phones containing illegal child pornography.

As an initial matter, claims not raised by a convicted federal criminal defendant on direct appeal are procedurally defaulted and may not be brought on collateral review under § 2255 unless the defendant shows either cause and prejudice or actual innocence in response to the

1    default.  *Bousley v. United States*, 523 U.S. 614, 622 (1998); *see also Gonzalez v. United States*,

2    No. SA CR 07-0202-DOC-6, 2021 WL 9747618, at *3 (C.D. Cal. June 11, 2021) (citing *United*

3    *States v. Dunham*, 767 F.2d 1395, 1397 (9th Cir. 1985)) ("Section 2255 is not designed to provide

4    criminal defendants repeated opportunities to overturn their convictions on grounds which could

5    have been raised on direct appeal.").

6         In this case, Caputo did not raise the prosecutorial misconduct claim on direct appeal and

7    has not made a showing of cause and prejudice to overcome this procedural default.  He does not,

8    for example, allege that his appellate counsel was ineffective for failing to bring the prosecutorial

9    misconduct claim or for any other reason.[4]  Caputo has additionally not shown "actual

10   innocence," as explained above.  As such, the Court finds that Caputo's prosecutorial misconduct

11   claim is procedurally barred.  *See Bousley*, 523 U.S. at 622.  But even if the prosecutorial

12   misconduct claim were not procedurally barred, it would fail on the merits because Caputo makes

13   no factual showing that the government actually violated *Brady* or that the government offered

14   the Cell Phones as evidence seized from Caputo.

15        The due process clauses of the Fifth and Fourteenth Amendments to the Constitution, as

16   interpreted by the Supreme Court in *Brady*, require the prosecution to learn of and disclose to the

17   defense any exculpatory or impeachment evidence favorable to the accused that is in the

18   prosecution's possession.  373 U.S. at 87.  The standard for withholding evidence is that "(1) the

19   evidence at issue must be favorable to the accused, either because it is exculpatory, or because it

20   is impeaching; (2) that evidence must have been suppressed by the State, either willfully or

21   inadvertently; (3) and prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281–82

22   (1999).

23        However, "strictly speaking, there is never a real '*Brady* violation' unless the

24   nondisclosure was so serious that there is a reasonable probability that the suppressed evidence

25   would have produced a different verdict."  *Strickler*, 527 U.S. at 281; *see also Dickey v. Davis*, 69

26   F.4th 624, 637 (9th Cir. 2023) (*Brady* requires that "a petitioner show there is a reasonable

27   probability that, had the evidence been disclosed to the defense, the result of the

28   _____

[4]  Caputo's ineffective assistance claim in the pending motion applies only to his trial counsel.

1   proceeding *would have* been different.").  When making a claim under *Brady*, the burden of

2   proving the need for disclosure is on the defendant.  *See United States v. Sai Keung Wong*, 886

3   F.2d 252, 256 (9th Cir. 1989) ("The mere suspicion that information will prove helpful is

4   insufficient to require disclosure.").

5           Separately, where the prosecution presents false evidence at trial in violation of the

6   Fourteenth Amendment, the defendant can obtain reversal of his conviction under *Napue v.*

7   *Illinois,* 360 U.S. 264, 269 (1959).  A claim under *Napue* will succeed when the claimant carries

8   the burden of showing (1) testimony (or evidence) was actually false, (2) the prosecution knew or

9   should have known that the testimony was actually false, and (3) . . . the false testimony was

10  material."  *Dickey*, 69 F.4th at 636 (citing *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (en

11  banc), quoting *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003)); *see Napue*, 360

12  U.S. at 269–71.

13          The factual record—which Caputo does not dispute—shows that: (i) the Cell Phones

14  belong to victim SH and were provided to the government by SH's father during investigation of

15  the charges against Caputo, and that, during discovery, (ii) the government identified the Cell

16  Phones as belonging to victim SH, provided trial counsel access to SH's Cell Phones and

17  contents, and advised trial counsel that a video it made of certain of the contents of SH's black

18  iPhone had been destroyed inadvertently during the prosecution.  (*See* Doc. 20; Doc. 24 at 1; Doc.

19  32 at 13; Doc. 32-1 at 9–11; Doc. 40; Doc. 168-2 at 1–2; Doc. 168-3 at 1–4; Doc. 168-4 at 1–2;

20  Doc. 168-5 at 1–2; Doc. 168-8 at 1–3.)

21          The government also provided trial counsel with documentation regarding receipt of the

22  Cell Phones from SH's father as well as the Phones themselves on May 4–6, 2014.  (*See* Doc.

23  168, at 4, citing Ex. 1 thereto at Bates 008013-23, Ex. 3 thereto at Bates 008947-50, Exs. 4, 5, 6

24  thereto; *see also* Doc. 168-1 at 3.)  Thus, trial counsel knew the source of and had access to the

25  Cell Phones prior to Caputo's guilty plea.  (*See* Doc. 81.)  Moreover, the FBI's documentation of

26  items seized during the search of Caputo's apartment, signed by his mother with whom he lived,

27  shows that the Cell Phones were not included among items seized.  (*See* Doc 168 at Ex. 7, 8.)

28          The record otherwise is in accord that the government seized from Caputo only his

cellphone and examined it during the February 28, 2014 search of his apartment pursuant to warrant.  (*See* Doc. 35 at 13–14, 20, 49–52; Doc. 75 at 13.)  The preliminary and final orders of forfeiture issued by the Court in late 2016 and early 2017 respectively list only one phone, "the Samsung cellular phone, seized from defendant by law enforcement on or about February 28, 2014."  (Doc. 87 at 1–2; Doc. 103 at 1–2; Doc. 113 at 49; *see also* Doc. 89 at 3.)  To the extent that Caputo's guilty plea had a factual basis in the content of a cellular telephone (*see* Doc. 80 at 8), the plea agreement refers only to Caputo's "Samsung cellular phone, seized from [him] by law enforcement on or about February 28, 2014."  (Doc. 80 at 6; *accord see* Doc. 87 at 1; Doc. 89 at 3; Doc. 103 at 1; *see also* Doc. 35 at 13–14, 20.)[5]

The government's post-judgment inclusion of the Cell Phones in its June 27, 2018 forfeiture letter is insufficient to raise a factual issue in contravention of the foregoing.  (*See* Doc. 20; Doc. 32 at 13; Doc. 32-1 at 9–11; Doc. 168-2 at 1–2; Doc. 168-3 at 1–4; Doc. 168-4 at 1–2; Doc. 168-5 at 1–2; Doc. No. 168-8 at 1–3.)  Given that trial counsel knew the Cell Phone evidence was obtained by the government from victim SH, Caputo does not show a denial of due process with respect thereto.  And the government's assertion that it included the Cell Phones in the June 27, 2018 forfeiture notice due to administrative error is supported by evidentiary facts and uncontroverted by Caputo.  (*Id.*)[6]  Under these circumstances, Caputo's claim for prosecutorial misconduct appears groundless.

**IV.  Malicious Prosecution**

Caputo additionally claims that the allegedly fabricated Cell Phone evidence constituted "malicious prosecution". (*See* Doc. 138 at 5; Doc. 159 at 11.)  This claim is not cognizable under

---

[5]  The cases Caputo cites as examples of government misconduct are so legally and factually distinguishable as to be irrelevant to his argument.  (*See* Doc. 171 at 7, citing *St. Amant v. Thompson*, 390 U.S. 727 (1968) (in a libel case, governmental official failed to show statements made by the press were published with reckless disregard of falsity), *Hale v. Fish*, 899 F.2d 390 (5th Cir. 1990) (misstatements and omissions in probable cause affidavit constituted constitutional violations under *Franks v. Delaware*, 438 U.S. 154 (1978).)

[6]  Even if the government failed to disclose its destruction of a video it made from Cell Phone contents as Caputo alleges in his reply brief, the inadvertent destruction of evidence that is not favorable to the accused does not support a constitutional claim.  *See California v. Trombetta*, 467 U.S. 479, 489 (1984) (a claim based upon failure to preserve evidence is limited to evidence that has exculpatory value, not otherwise available to the defense); *see also Arizona v. Youngblood,* 488 U.S. 51, 58 (1988) (government's failure to preserve potentially exculpatory evidence rises to the level of a due process violation if a defendant can show that the government acted in bad faith).

1   28 U.S.C. § 2255 because it does not challenge the validity of Caputo's conviction or sentence.

2   *See Awabdy v. City of Adelanto*, 368 F. 3d 1062, 1066 (9th Cir. 2004) (indicating that malicious

3   prosecution is a tort and, in federal court, must be brought in a § 1983 motion); *United States v.*

4   *Woods*, No. 212CR330WBSEFBP, 2020 WL 2062175, *4 (E.D. Cal. April 29, 2020), *adopted as*

5   *modified*,  E.D. Cal. Case No. 2:12-cr-00330 WBSEFB, Doc. 232 (June 16, 2020) (claim for

6   malicious prosecution found to be procedurally barred); *see also Schipke v. United States*, No. CR

7   04-2195-TUC-CKJ, 2011 WL 10550694, *4 (D. Ariz. Oct. 21, 2011) (movant's claim of

8   malicious prosecution not cognizable in a § 2255 motion).

9         Additionally, a claim for malicious prosecution cannot be stated, where, as here, movant's

10   conviction stands.  *United States v. Kiles*, No. CIV. S-06-1191 EJG, 2007 WL 2705236, at *7

11   (E.D. Cal. Sept. 14, 2007),  citing *McCall v. Gates,* 36 F.3d 1103 & n. 2 (9th Cir.1994) ("To

12   prove malicious prosecution a defendant must show that 1) a criminal proceeding was initiated

13   against the defendant; 2) with malice; 3) without probable cause; and 4) terminated in defendant's

14   favor.")  Caputo's malicious prosecution claim is therefore dismissed as non-cognizable.

## V.    Invalid Plea

16         Caputo next argues that his guilty plea is invalid because he was coerced by the alleged

17   prosecutorial misconduct and because his trial counsel was ineffective by failing to fully advise

18   him of potential defenses and the factual basis for his plea.  (*See* Doc. 171 at 4 n.5, 5–6.)  Claims

19   that a plea or waiver is involuntary or that ineffective assistance of counsel rendered the plea or

20   waiver involuntary cannot be waived.  *See United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir.

21   1993) ("we do not hold [the] waiver categorically forecloses . . . any § 2255 proceeding, such as a

22   claim of ineffective assistance of counsel or involuntariness of waiver"); *Washington v. Lampert*,

23   422 F.3d 864, 871 (9th Cir. 2005) (same); *cf. Davies v. Benov*, 856 F.3d 1243, 1246–47 (9th Cir.

24   2017), quoting *United States v. Jeronimo*, 398 F.3d 1149, 1153 (9th Cir. 2005), *overruled on*

25   *other grounds by United States v. Jacobo Castillo*, 496 F.3d 947, 954 (9th Cir. 2007) ("A

26   defendant's waiver of his rights to appeal and to bring a collateral attack is generally enforced if

27   '(1) the language of the waiver encompasses his right to appeal on the grounds raised, and (2) the

28   waiver is knowingly and voluntarily made.' ").  Therefore, a defendant may challenge the validity

14

of his wavier of the statutory right to collaterally attack his sentence or conviction.  *United States v. Malauulu*, No. 2:15-CR-00124-KJM, 2020 WL 3642611, at *3 (E.D. Cal. July 6, 2020) ("In determining whether a defendant knowingly and voluntarily waived a right in a plea agreement, courts consider the "circumstances surrounding the signing and entry of the plea agreement . . ."). The defendant bears the burden to show the plea agreement and waiver were not knowing and voluntary.  *United States v. Michlin*, 34 F.3d 896, 899 (9th Cir. 1994).

The Ninth Circuit, in its unpublished decision affirming judgment upon guilty plea, has already found on *de novo* review that Caputo "knowingly and voluntarily entered into the plea agreement." (*See* Doc. 128, at 2.)  However, the Court will reevaluate Caputo's plea in light of the newly presented evidence central to Caputo's arguments.

### A.      Coercion

A plea is coerced, a denial of due process, and void if it is "induced by promises or threats which deprive it of the nature of a voluntary act."  *Iaea v. Sunn*, 800 F.2d 861, 866 (9th Cir. 1986) (citing *Machibroda v. United States*, 368 U.S. 487, 493 (1972)).

Caputo provides no explanation as to how he was coerced in this case.  He does not describe any actual threats made by the government or other conduct that would support his conclusory statement that he was coerced.  To the contrary, Caputo acknowledged in his plea agreement that the plea was "voluntary and that no force, threats, promises or representations have been made to anybody, nor agreement reached, other than those set forth expressly in this agreement, to induce the defendant to plead guilty." (Doc. 80 at 3.)  Caputo therefore fails to proffer facts suggesting mental coercion overbearing his will to the extent that his guilty plea is rendered void.  *See Iaea,* 800 F.2d at 866.

### B.      Ineffective Assistance of Trial Counsel

Caputo next claims that the newly discovered Cell Phone evidence shows that his trial counsel was ineffective by failing to fully advise him of potential defenses and the factual basis for his plea, rendering his guilty plea invalid.  (*See* Doc. 171 at 4 n.5, 5–6.)  He claims that trial counsel's deficiencies were prejudicial because in the absence thereof, he would have gone to trial.  (*Id.*)

1    The Sixth Amendment right to the effective assistance of counsel extends to the plea-

2  bargaining process, including the decision whether to accept or reject a plea offer.  *See Lafler v.*

3  *Cooper,* 566 U.S. 156, 162 (2012); *see also Hill v. Lockhart,* 474 U.S. 52, 58–59 (1985).  The

4  negotiation of a plea bargain is a "critical phase of litigation" for purposes of the Sixth

5  Amendment right to effective assistance of counsel.  *Padilla v. Kentucky,* 559 U.S. 356, 373

6  (2010) (citing *Hill,* 474 U.S. at 57).

7    Ineffective assistance of counsel claims may be heard on collateral review even if a

8  defendant could have, but failed to, bring those claims on direct appeal.  *See Massaro v. United*

9  *States*, 538 U.S. 500, 504–05, 509 (2003); *see also United States v. De la Fuente*, 8 F.3d 1333,

10  1337 (9th Cir. 1993); *United States v. Ratigan*, 351 F.3d 957, 964–65 (9th Cir. 2003).  The law

11  governing ineffective assistance of counsel claims is clearly established.  *Canales v. Roe*, 151

12  F.3d 1226, 1229 (9th Cir. 1998).  In *Strickland v. Washington*, the Supreme Court held that there

13  are two components to an ineffective assistance of counsel claim: "deficient performance" and

14  "prejudice."  466 U.S. 668, 694 (1984).

15    First, "deficient performance" means representation that "fell below an objective standard

16  of reasonableness."  *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011), citing *Strickland*, 466

17  U.S. at 688.  The movant must identify counsel's alleged acts or omissions that were not the result

18  of reasonable, professional judgment considering the circumstances.  *See Strickland*, 466 U.S. at

19  690; *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995).  There is a strong

20  presumption that counsel's performance fell within the wide range of professional assistance.  *See*

21  *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986), quoting *Strickland*, 466 U.S. at 689; *Bloom v.*

22  *Calderon*, 132 F.3d 1267, 1270–71 (9th Cir. 1997); *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir.

23  1990).  Judicial scrutiny of counsel's performance is highly deferential.  *See Strickland*, 466 U.S.

24  at 677–78; *Quintero-Barraza*, 78 F.3d at 1348; *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir.

25  1994).

26    Second, to demonstrate prejudice, the movant must show that "there is a reasonable

27  probability that, but for counsel's unprofessional errors, the result of the proceeding would have

28  been different."  *Strickland*, 466 U.S., at 694.  "It is not enough 'to show that the errors had some

conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *United States v. Leonti*, 326 F.3d 1111, 1120 (9th Cir. 2003).

Caputo claims that trial counsel was deficient by failing to discover that the Cell Phone evidence was fabricated and thereupon advise him how that tainted evidence impacted potential defenses to the charges and the factual basis for the guilty plea. (*See* Doc. 171 at 6–7, citing *Strickland*.) He argues these deficiencies made his guilty plea unknowing, involuntary, and invalid. (*Id.*)

In the context of a defendant pleading guilty upon counsel's advice, the Supreme Court has stated that:

> the voluntariness of the plea depends on whether the advice was within the range of competence demanded of attorneys in criminal cases. The two-part standard adopted in *Strickland* . . . applies to guilty plea challenges based on ineffective assistance of counsel. In order to satisfy the second, or "prejudice," requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill,* 474 U.S. at 52 (1985). The Ninth Circuit has similarly observed that:

> Because a guilty plea is a waiver of the Fifth Amendment's protection against compulsory self-incrimination, the right to a jury trial and the right to confront one's accusers, *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1170–71, 22 L.Ed.2d 418 (1969), it must be a knowing, intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). Because "an intelligent assessment of the relative advantages of pleading guilty is frequently impossible without the assistance of an attorney," *id*. at 748 n. 6, 90 S.Ct. at 1469 n. 6, counsel have a duty to supply criminal defendants with necessary and accurate information.

*Iaea*, 800 F.2d at 865.

Where a defendant alleges ineffective assistance of counsel in the context of a guilty plea, the criteria considered by a federal court include whether counsel attempted to learn all facts of the case and estimate a likely sentence and communicate the results of that analysis to the

1    defendant before allowing entry of a guilty plea.  *Moore v. Bryant*, 348 F.3d 238, 241 (7th Cir.

2    2003) (counsel deficiently advised on plea agreement by failing to review the relevant law

3    regarding application of good time credits).

4         Counsel is duty bound to independently investigate the facts, circumstances, pleadings,

5    and law in order to offer an informed opinion as to what pleas should be entered.  *Von Moltke v.*

6    *Gillies*, 332 U.S. 708, 721 (1948).  Counsel must advise on the relative strength of the prosecution

7    and defense cases, the possibility of avoiding conviction on some or all charges by going to trial,

8    and whether pleading guilty would then present advantages over going to trial.  *Libretti v. U.S.*,

9    516 U.S. 29, 50-51 (1995).  Counsel also must advise on the penalties the defendant faces and the

10   effect of pleading guilty thereon.  *Tollett v. Henderson*, 411 U.S. 258, 268 (1973).  Counsel must

11   advise on the government's burden at trial and the constitutional rights surrendered and waived

12   under the plea agreement.  *Raysor v. U.S.*, 647 F. 3d 491, 494–97 (2d Cir. 2011).

13        Caputo has not demonstrated, on the factual record available to the Court, that trial

14   counsel was deficient in investigating and advising on the prosecution's case, the controlling law,

15   or on the sentencing exposure.  Caputo specifically fails to proffer facts that trial counsel advised

16   him to plead guilty without investigating the relevant facts and law.  (*See* Doc. 171 at 8, citing

17   *Iaea*, 800 F. 2d, at 865 ("The gross mischaracterization of the likely outcome presented in this

18   case, combined with the erroneous advice on the possible effects of going to trial, falls below the

19   level of competence required of defense attorneys.")); *see also Smith v. Mahoney*, 611 F.3d 978,

20   986–86 (9th Cir. 2010) (counsel deficient by failing to investigate facts of and defenses to crime

21   prior to entry of plea of guilty); *United States v. Moore*, 599 F.2d 310, 313 (9th Cir. 1979) (plea

22   entered because counsel is unprepared for trial is involuntary).

23        In Caputo's plea colloquy with the Court, he agreed that trial counsel reviewed with him

24   the entire plea agreement, which he entered freely without force or threat, including as to the

25   charges, the government's burden, the elements of the charges, the factual basis for the plea and

26   the truth of those facts, rights waived, sentencing range and factors, the minimum and maximum

27   penalty, forfeiture, restitution, and special assessment.  (Doc. 111 at 2–7.)  There is a "strong

28   presumption" of truthfulness afforded to these "solemn declarations made in open court."  *Chizen*

18

*v. Hunter*, 809 F.2d 560, 562 (9th Cir. 1986); *see also Kingsbury v. United States*, 783 F. App'x 680, 682-83 (9th Cir. 2019) ("Defendant failed to establish a claim of ineffective assistance of counsel for allegedly feeling pressured to plead guilty by his attorney…. [D]efendant's prior sworn statements directly contradicted the allegations presented in the motion to vacate conviction petition[.]").  And, because Caputo has not shown that the government's treatment or use of the Cell Phone evidence violated his federal rights, trial counsel could not have been deficient by failing to raise meritless claims about that evidence.  *See Boag v. Raines*, 769 F.2d 1341, 1344 (1985) (counsel was not ineffective by failing to raise a meritless claim).

Although the Court concludes that Caputo has not demonstrated trial counsel was deficient, the Court will nevertheless briefly address the "prejudice" *Strickland* factor.  As to this factor, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58–59.  The probability of prejudice may not be based merely upon conjecture or speculation.  *See Mickens v. Taylor*, 122 S.Ct. 1237, 1246 (2002) (Kennedy, J. concurrence) (regarding speculation as having no place in a *Strickland* analysis); *see also Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001) (citing *Hill*, 474 U.S. at 59) (the assessment of prejudice from counsel's allegedly deficient advice regarding a plea agreement depends in large part on a prediction whether the evidence likely would have changed the outcome of the trial).

In order to show prejudice, a movant must do more than merely allege he would have insisted on going to trial absent counsel's deficient conduct, he must demonstrate that rejection of the plea offer would have been rational under the circumstances.  *See Padilla*, 559 U.S. at 372; (*cf.* Doc. 171, at 3, citing *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (given the forfeiture of a judicial proceeding that follows a guilty plea, a defendant can show prejudice by demonstrating a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").)  Here, even assuming that trial counsel erred by deficiently investigating and advising on the Cell Phone evidence, the alleged error could not have impacted Caputo's decision to plead guilty because the prosecution did not present evidence

19

attributing the Cell Phones to Caputo.  Absent such attribution, and given the noted charges, the evidence supporting the prosecution's case, the factual basis for the plea agreement, and the Court's sentencing options, Caputo has not shown that rejection of the plea offer would have been rational.  *See Padilla*, 559 U.S., at 372.

In sum, Caputo wholly fails to demonstrate that his plea was not knowing and voluntary due to ineffective trial counsel or for any other reason.  The Court therefore finds that Caputo's guilty plea agreement was knowingly and voluntarily entered notwithstanding the new Cell Phone evidence, and Caputo has waived his right to collateral relief.  Such a waiver is enforceable where, as here, the waiver encompasses the right to collateral relief on the grounds raised, and the waiver is knowingly and voluntarily made.  *See United States v. Goodall*, 21 F.4th 555, 561 (9th Cir. 2021) (addressing the closely related topic of appeal waivers); *Jeronimo,* 398 F.3d, at 1152–53 (same).

**VI.   Certificate of Appealability**

The Court denies Caputo a certificate of appealability.  *See* Rule 11, 28 U.S.C.A. § 2255.  Caputo required to obtain a certificate of appealability in order to appeal a decision denying a motion under 28 U.S.C. § 2255.  A court may issue a certificate of appealability where the moving party has made a "substantial showing of the denial of a constitutional right," and reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserve encouragement to proceed further.  *See Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003).

The Court finds that Caputo has not made a substantial showing of the denial of a constitutional right, for the reasons stated.  Furthermore, based on the foregoing, Caputo cannot show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

**CONCLUSION**

Accordingly:

1.    Caputo's motion (Docs. 130, 136) is **DENIED WITH PREJUDICE** except to the extent that his claims alleging insufficient evidence and malicious prosecution are

1           **DISMISSED** as non-cognizable.

2        2.        The Court **DECLINES** to issue a Certificate of Appealability

3

IT IS SO ORDERED.

4

5    Dated:   **August 14, 2023**

                         UNITED STATES DISTRICT JUDGE

21